ROBERT LOVETT, Executor, &c., Respondent, *v.* AUGUSTA GIL-
LENDER *et al.*, Appellants.

A testator gave to his two daughters, M. and A., twelve thousand dollars each,
as an annuity during their natural lives. He gave to his grand-daughter, H.,
one-fourth part of all his real and personal estate; and to his remaining
grand-daughters, nine in number, the remaining three-fourths. He directed
that, in case of the death of either of his daughters, M. or A., her annuity
should be paid to her child or children until a division of the estate between
them should be made; but that no division should be made until after the
death of his said daughters. *Held:*

That the daughters took no estate in the testator's property beyond the annui-
ties given, except so far as the will contained a special devise and bequest to
his daughter A., etc.

That the restrictions upon the division of the property among the grandchildren,
being repugnant to the absolute and unqualified gift of the estate to them,
was inoperative and void, so that the estate vested in the devisees and lega-
tees, at the death of the testator, subject to the payment of the annuities, etc.

That the annuities given to each of the daughters would cease at the time of
their respective deaths.

That the shares taken by the grandchildren were vested estates, taking effect
immediately on the death of the testator.

That all restrictions, postponements, or prohibitions upon the right to sell or
divide the estate, were inoperative and void.

BILL for the construction of the will of George Lovett.
The testator made his will, dated in October, 1861, and died in
January, 1864, leaving two married daughters, Augusta Gil-
lender and Mary Kingsland, his only heirs-at-law surviving.
Augusta was born in 1812, and Mary in 1814. At the
making of the will, and at the death of the testator, Augusta
Gillender had but one child, Helena L., and Mary had nine,
all then living. The substantial provisions of the will are as
follows : After payment of his debts, and giving legacies of
$10,000 to his brother Robert, $5,000 to his sister, and $5,000
to his nephew, the will proceeds as follows : " I give to my
daughters, Augusta Gillender and Mary Kingsland, $12,000
per year each, payable quarterly, during their lives ; and I
also give to my daughter, Augusta Gillender, the premises
I now occupy, No. 23 Union Square, for her use or benefit,
during her life, she paying all taxes and charges against said

TIFFANY— VOL. VIII. 78

property. I also give to my said daughter, Augusta, all my furniture and plate of all descriptions, and, in case of the death of either of my said daughters, the amount left to either of them, as above mentioned, shall be paid to child or children of them, until my estate is divided between my grandchildren. I give to my granddaughter, Helena Gillender, one-fourth part of all my real and personal estate, and the other three-fourths to be equally divided between the rest of my grandchildren, after the death of my two daughters, Augusta and Mary, and no division in any case before that time. And it is my will, that no part of my real estate be sold or incumbered during the lives of my two daughters, or either of them; and it is my will, that any balance of money unexpended of my estate shall be invested on bond and mortgage on real estate. I leave to the surviving executors and executrixes, hereinafter named, and, in order to effect a division of my estate, I give and grant unto my said executors, the survivor, or survivors of them, all lawful authority to sell and convey, and to execute deeds of conveyance, of my real estate, after the death of my two daughters."

The annual income of his estate, at the time of his decease, was over $120,000. His real estate was worth about $800,000.

From the decree herein entered at the Special Term, and afterward affirmed at the General Term of the Supreme Court of the first district, the defendants, Augusta Gillender, her husband and daughter, severally appealed to this court.

*William M. Evarts*, for the appellants, Augusta Gillender and her husband.

*Charles H. Glover*, for Miss Gillender.

*Charles O'Conor*, for the Kingsland grandchildren.

Peckham, J. It is insisted, on the part of the appellants, Augusta Gillender and her husband, that the grandchildren of the testator take, under the will, future estates commencing in possession after the death of his daughters; that these future estates are remainders, the precedent estates being in the testator's daughters, as his heirs-at-law, and

Opinion of the Court, per PECKHAM, J.

entitled to the personalty, under the statute of distributions. It is also insisted that, "upon the words of the principal devise, leaving out of view all other parts of the will, the daughters would take an estate for life as tenants in common."

The chief question in the case is, whether the testator's daughters take any interest in his property, other than their annuities, and the special bequests to Augusta, and the devise to her for life of the dwelling in Union Square. I think they do not. The devise to the grandchildren is not of a future estate. To Miss Gillender, clearly, it is a present estate. "I give to my granddaughter, Helena Gillender, one-fourth part of all my real and personal estate." Then he adds: "And the other three-fourths to be equally divided between the rest of my grandchildren, after the death of my two daughters, and no division in any case before that time." That is the same as if he had said, "I give the other three-fourths to my other grandchildren, to be equally divided between them, after the death of my daughters." The title to the estate, is *in presenti*. The division is not to be made until after the death of his daughters. The division is in the future, not the estate. The testator was earnest as to the division. Hence he repeats and fortifies it, adding, "and no division in any case before that time." Further, "that no part of my real estate be sold or incumbered during the lives of my two daughters, or either of them." "That any balance of money unexpended of my estate shall be invested on bond and mortgage, on real estate." Further, "in order to effect a division of my estate," he gave to his executors power to sell and convey his real estate, after the death of his daughters.

There is nothing even in this part of the will, absolutely inconsistent with a present gift of the title to his property to his grandchildren; no prohibition against their occupying, in common, any real estate devised to them, or receiving the rents and profits thereof—no prohibition against their receiving or using the personal estate or its dividends.

By the terms of the will, the property subject to the legacies, &c., was given to the grandchildren if to any one. It

is clear, the testator did not intend to give all the residue of his real and personal estate to his daughters for life, as he had already carefully provided for them by an annuity to each for life, by a life estate in his dwelling house to Mrs. Gillender, and by bequests of other property. These annuities would have been entirely idle and absurd, if he had intended in the same will to give them the whole of his income—amounting to four times these annuities. (1 Jarm. on Wills, 466; *Willis* v. *Lucas,* 1 P. Wms. 472.) So that, looking at the whole will, it is impossible to say, that the testator intended to give a life estate, or any estate in his property to his daughters, beyond the particular provisions made for them.

The intention of the testator is probably apparent. He intended to make a reasonable provision for his daughters, and give the title in the residue of his property to his grandchildren, and have it accumulate until the death of his daughters. That there should be no division until then, and then it should all go to his grandchildren absolutely. The intention of the testator should always be carried out, when not in conflict with the law. In this case it clearly is in conflict with the law. Such accumulation is forbidden by our statutes. (1 R. S., 726, §§ 37, 38.)

Looking at this will without the aid of authority, I should say there is a present absolute gift of the residue of the testator's property, real and personal, to his grandchildren, after providing for the annuities and bequests before given. Authority and legal principles, I think, confirm that construction.

The terms of the gift being absolute and *in presenti,* passed the title to the beneficiaries, the grandchildren and the prohibition against a division, sale or incumbrance, is repugnant to the title and estate thus granted, and I think is void. (*Roosevelt* v. *Thurman,* 1 Johns., Ch., 228; *Lane* v. *Lane,* 8 Allen, 350; *Oxley* v. *Lane,* decided at last term of this court; and see *Craig* v. *Wells,* 1 Kern., 322.)

These prohibitions of the testator were a part of his unlawful purpose of accumulation, and fell with that purpose. It is said that there is no gift in terms of the rents of the real

or of the interest of the personal property accruing intermediate the death of the testator and the time when the property was directed to be divided, viz., the death of his daughters. This is true, but such a gift was entirely unnecessary. The whole title was granted, and a transfer of the principal always carries every incident attached, viz., the rents of the real and the income of the personal property. There is no ground for claiming that the daughters took an estate for life, by implication, under this will. This is scarcely insisted upon under all the provisions of the will. The proposition, as put forth, is expressly based "upon the words of the principal devise, leaving out all other parts of the will." Such an estate cannot be implied, even on that basis. First. Because the estate granted to 'the grandchildren is not a future estate, but an absolute present title, as tenants in common, to be divided merely in the future. Second. If it were a future estate to the grandchildren, to commence after the death of his daughters, it would not give to the daughters a life estate by implication. (See 1 Jarm. on Wills, 465, 466; 2 Jarm. Powell on Devises, 199, &c., and authorities cited.)

If the daughters take a life estate at all, they take as heirs, and not as devisees, on the ground that that estate is not devised by the will, and, therefore, descends to the heirs.

But, looking at all the provisions of the will, as we must, to give it an intelligent construction, it is quite clear that a present, vested estate passed to the grandchildren. This is so clear that it may be taken as a basis for construing the other parts of the will.

It is insisted, on behalf of Miss Gillender, that the provision of the will, continuing to the child or children of his daughter first dying, the amount left to either of them, as above mentioned, until the division of his estate among his grandchildren, is valid and should be sustained.

This continuance was undoubtedly ordered upon the ground that no part of the estate was to be divided until after the death of his two daughters. It was, therefore, designed to provide for the family of the daughter first dying, until the property should be divided.

This purpose having failed, the whole object of this provision fails, also, and we think it must be declared void.

The slight difference in the age of the sisters affords very little ground for determining who will probably be the survivor, although, if Mrs. Kingsland should long survive her sister, Miss Gillender's interest would clearly be promoted by sustaining this provision of the will.

It follows, also, from these views, that the house in Union Square is given by a vested devise to the grandchildren, subject only to the life estate of Mrs. Gillender.

Under the will no estate in the property was given to the executors. It simply gives them authority to sell and convey after the decease of his two daughters, for the purpose of "effecting a division" of his estate. Whether the design was to sell only a part, made necessary for equality of partition, or the whole, it is not material to inquire. This is mere authority, without any direction, to sell, was given upon the supposition that the estate could not be divided or sold until after the death of his daughters. There is no reason for its continuance, under the changed circumstances, and it may be properly extinguished. There is no ground for claiming that the real estate should be regarded as converted into personal property, under this provision. It is not necessary to be so converted, either to carry into effect the will of the testator, or to prevent injustice to any one. (*Van Vechten* v. *Van Vechten*, 8 Paige, 104.)

There is but one other question alluded to in the case, and that is, whether the grandchildren, living at the death of the testator, took an absolute title then, or did the devise to the "rest of my grandchildren" include those who might be born after the testator's death. From the ages of the daughters at the time of the testator's decease, the probability of any such question ever having any practical application in this case, would seem to be very remote.

An *ex parte* argument was made upon this point by the counsel for the Kingsland grandchildren. Upon objection by their counsel, the court refused to hear the counsel of Miss Gillender, upon the other side, as she could have no interest

in that question. The gift to her being to her by name of a certain, fixed, absolute share in his estate, and, of course, her counsel was without authority to appear for possible unborn grandchildren.

It does not seem to me to be at all necessary to the execution of the valid provisions of this will, that this question should be decided. Considering the present ages of the daughters, it can scarcely be regarded as a practical question, and, to my mind, it is not seemly that the rights of these possible unborn grandchildren should be cut off without any opportunity afforded them of being heard. Whatever opinion or decision should now be given, no court should ever regard it as conclusive against them, or refuse to award to them any rights they might be entitled to under the will.

The case, as presented, does not call for an opinion upon this point, and we decline to volunteer one. These views lead to an affirmance of the decree of the court below. The costs of the parties to the litigation should be paid out of the estate.

DAVIES, Ch. J. George Lovett, late of the city of New York, deceased, on the 17th day of October, 1861, made his last will and testament, and died on the 5th day of January, 1864. He left real estate of the value of about $800,000, and personal property amounting to about $1,200,000. He left him surviving two daughters, Mary Kingsland and Augusta Gillender, both married, and having issue. Mrs. Gillender has one child living, and Mrs. Kingsland, at the time of the testator's death, had nine. The complaint in this action is filed to obtain the proper construction of the testator's will, and the portions of it material to be considered, are in these words:

"I give to my daughters, Augusta Gillender and Mary Kingsland, twelve thousand dollars per year each, payable quarterly, during their lives. And I also give to my daughter, Augusta Gillender, the premises I now occupy, No. 23 Union Square, for her use or benefit during her life, she paying all taxes and charges against said property; I also give

to my said daughter Augusta all my furniture and plate of all descriptions; and, in case of the death of either of my said daughters, the amount left to either of them, as above mentioned, shall be paid to the child or children of them, until my estate is divided among my grandchildren.

"I give to my granddaughter, Helena Gillender, one-fourth part of my real and personal estate, and the other three-fourths to be equally divided between the rest of my grandchildren, after the death of my two daughters, Augusta and Mary, and no division, in any case, before that time.

"And it is my will that no part of my real estate be sold or incumbered during the lives of my two daughters, or either of them, and it is my will that any balance of money unexpended of my estate shall be invested on bond and mortgage on real estate. I leave to the *surviving* executors and executrixes, hereinafter named, and in order to effect a division of my estate, I give and grant unto my said executors, the survivor or survivors of them, all lawful authority to sell and convey, and to execute deeds of conveyance of my real estate, after the death of my two daughters." The testator appointed his son-in-law, Ambrose C. Kingsland, his brother, Robert Lovett, his executors, and his two daughters the executrixes of his last will, and the same was duly proven as a will of real and personal estate.

The Supreme Court, at Special Term, gave judgment declaring:

1. That the annuity given to each daughter would absolutely cease at her death, and that the executors should hold and invest a sufficient amount of the personal estate, other than leases of lands, to satisfy such annuities.

2. That Mrs. Augusta Gillender was entitled to a life estate in the house in Union Square.

3. That neither of the testator's daughters took any other interest in the rents and profits or income of the testator's property, real or personal.

4. That Miss Helena Gillender took three-twelfths, and each of the Kingsland children one twelfth of all the residue of the testator's real and personal estate.

5. That the shares so taken by the ten grandchildren respectively were vested estates and interests, taking effect immediately upon the testator's death, and not liable to be affected by any subsequent event. That all postponements or prohibitions of or restrictions upon the right to sell, incumber or divide the testator's property, contained or intended in said will, were inoperative and void.

6. That the executors and executrixes took no estate, in the real estate, nor any right to receive any rents thereof; that the executrixes had no power to sell the real estate; and that the power of sale given to the executors be restrained and annulled, save and except only, in respect to the said house and lot in Union Square.

On appeal, this judgment was affirmed at the General Term and the defendants, Mr. and Mrs. Gillender, and their daughter, Miss Helena Gillender, now appeal to this court.

1. The annuities given to the two daughters were for their lives respectively. It was all the testator intended they should receive personally of his estate, with the exception of the provision made, in addition to favor of Mrs. Gillender. The condition of the pecuniary affairs of the sons-in-law sufficiently indicate the reasons for this discrimination in her favor. It is apparent from the whole frame work of the will that the testator had in his mind the scheme of retaining his whole estate, real and personal, with the exception of these annuities and the specific bequests and legacies contained in the will, in a mass until the death of his surviving daughter. But it will be seen that he entirely failed to effectuate any such intention, and that the shares of his estate, given to his grandchildren, vested absolutely in them upon his death. Having in his mind the idea that his grandchildren would not come into the possession and enjoyment of their respective shares of his estate until the death of his surviving daughter, he directed that "the amount left to either of them [his daughters] as above mentioned, shall be paid to child or children of them until my estate is divided between my grandchildren." It is manifest what consideration influenced the testator in giving these directions. He assumed that the

estate would not be divided until the death of the surviving daughter, and until that event it would remain intact. The result in this contingency would be, that in the event of Mrs. Gillender dying and Mrs. Kingsland surviving, the extent of the provision for the support of the daughter of the former would be the rents of the house on Union Square after payment of all taxes and charges thereon.

In view of such a result this clause was inserted. The annuity was only to be paid to the child, or children, of the deceased daughter, until his estate was divided among his grandchildren. This was the controlling event, which was to determine the duration of its payment. If such division should take place, during the lifetime of the daughters, then, by the express terms of the gift, it was not to take effect, and such division rendered wholly unnecessary the provision itself. The testator never contemplated, that the annuity to the child or children of a deceased daughter, was to be paid by them, to themselves, out of an estate wholly vested in them, and in which they had the full enjoyment. It is, therefore, very clear, that the annuity to each daughter terminates upon her death, if at the happening of that event, the estate of the testator had been divided among his grandchildren. The division contemplated by the testator was a vesting of each share absolutely in the beneficiaries, and the right to enjoy the income and profits thereof. Whenever that event should happen then the annuity given to each daughter should terminate with her life. The testator had no intention of keeping alive such annuities after the vesting of the estate given to the beneficiaries, and after they became entitled to participate in the rents, and profits, and income thereof. If that event has happened before the death of either of the testator's daughters, and sooner than contemplated by the testator, then it is a necessary consequence that the annuity given will terminate, upon the death of the annuitant. It is expressly given for life, and must, therefore, be paid during the life of the annuitant. It ceases on the death of either, if, at that period, the contingency, upon which alone it was to be paid to the deceased annuitant's

child or children, could never arise. In the view we take of this will, the estate given to the grandchildren cannot be undivided in the sense contemplated by the testator, at the death of both or either of the daughters, and consequently the annuity given to them for life must cease upon their respective deaths.

There is no controversy that Mrs. Gillender is entitled to a life estate in the Union Square House. The provision of the will on this point is so clear that no question is raised to the contrary.

So it would seem to be equally clear, that neither of the testator's daughters took any other interest in the rents and profits, or income of his property, other than the annuities, and the gift to Mrs. Gillender of the rents and profits of the Union Square House for life. It cannot be doubted that such was the intent of the testator, and they could only take any additional portion, in the event of an intestacy, as heirs-at-law. If we find that the testator has made a legal and valid disposition of all the rent and residue of his estate, real and personal, then it must be conceded that the interest of the daughters is confined to the annuities, and the life estate to one of them in the Union Square House. This brings us to the next subject of inquiry, what if any disposition has been made by the testator of the residue of his estate, real and personal.

He manifestly intended to make such disposition of all the residue of his estate, and it remains to be considered whether that intent has been carried into effect. The testator says: "I give to my granddaughter, Helena Gillender, one-fourth part of all my real and personal estate." No one can doubt but that this is a present gift and devise, to the person named, of one-fourth part of all the testator's estate, real and personal, absolutely and unqualifiedly, subject to the payment of the annuities, and to the life estate created in a portion of the real estate. It would pass one-fourth part of the personal estate, presently and absolutely, to the donee, and vest, immediately on the death of the testator, one-fourth part of his real estate in his granddaughter, subject as afore-

said. The gift and devise of the remaining three-fourths of all his real and personal estate to the rest of his grandchildren, which were the children of his daughter, Mary Kingsland, is, in substance, in the same language. It may be read thus : " I give to the rest of my grandchildren the other three-fourth parts of all my real and personal property, to be equally divided between them." The same observations may be applied to this gift and devise as have been made in reference to those to Miss Gillender. They are equally absolute and present, and vest the personal and real estate instantly on the death of the testator, in the donees and devisees. (4 Kent Com., 535, and cases cited.) The testator added a restriction to the gift and devise to the rest of his grandchildren, in the form of a direction, that the division among them was to be made after the death of his two daughters, and adds, "and no division in any case before that time."

This restriction is clearly repugnant to the absolute and unqualified gift already made, and is inoperative and void. So are all the postponements or prohibitions of the right to sell, incumber, or divide the testator's property contained in the will. They are repugnant to the estate given, and must, therefore, fall. This precise point was held by this court, in the case of *Oxley* v. *Lane*, decided at the last term of this court, and the doctrine of that case is conclusive upon the one now at bar.

The only authority given to the executors named, is to sell and convey, and execute deeds of conveyance of the real estate, for the sole purpose of effecting a division thereof, upon the death of the testator's daughters. As the law made that division upon the death of the testator, the provision is inoperative, and has nothing to support it. It was in any event a passive trust, and the estate rested in the devisees, without the necessity of a conveyance from the executors.

We see no grounds for interfering with the judgment of the Supreme Court, and are of the opinion that it should, in all respects, be affirmed.

Judgment affirmed.