JOSEPH HETZEL, Respondent, v. WILLIAM C. BARBER, Appellant.

A sheriff's deed, given in pursuance of a sale upon execution, and duly recorded, is protected by and has the benefit of the recording act (1 R. S. 756, § 1.)

A power to sell land can only be exercised in the manner and for the precise purpose declared and intended by the donor; when the purpose becomes wholly unattainable the power ceases; and this is so, although the purpose is defeated by the voluntary act of the person for whose benefit the power was created.

E. devised certain real estate to her husband and two daughters, one-third to each; the husband was authorized to sell and convey it, and in case of sale was directed to invest the daughters' portions of the proceeds and keep the same invested, to be paid to them with the accumulations of interest when they severally reached the age of twenty-five years. *Held*, that the power of sale did not attach to the one-third, the fee of which was given to the husband, as it was merged or absorbed in the fee; that as to the other two-thirds, the daughters took an absolute fee, subject to the execution of the power.

It *seems* that the direction as to accumulation was valid only until the daughters respectively arrived of age.

In February, 1869, the husband conveyed the one-third devised to him to plaintiff by deed, which was not recorded until December, 1871. The premises were sold in January, 1870, upon execution against the husband, and in pursuance thereof defendant, who was a purchaser in good faith, for a valuable consideration, without notice of the prior

| | |
|---|---|
| 69 | 1 |
| 116 | 246 |
| 69 | 1 |
| 125 | 36 |
| 125 | 752 |
| 69 | 1 |
| 127 | 431 |
| 127 | 569 |
| 69 | 1 |
| 139 | 220 |
| 69 | 1 |
| 140 | 103 |
| 69 | 1 |
| 141 | 469 |
| 69 | 1 |
| 144 | 569 |

conveyance, received the sheriff's deed April 17th, 1871, which was recorded on that day. In an action of ejectment, *held*, that defendant was entitled to the one-third.

In April, 1870, the husband by a deed purporting to be in execution of the power contained in the will, and without reference to the former deed conveyed the whole of the premises to plaintiff, which deed was recorded prior to the giving and recording of defendant's deed. *Held*, that as to the one-third previously conveyed, the deed had no validity; that the first deed to plaintiff was valid and effectual as between him and the grantor, and the latter had nothing left to convey to plaintiff or to any one save to a purchaser in good faith, for value, whose deed should be first recorded; that the power gave no force to the second deed, and that therefore the record of it did not affect defendant's rights.

At the time of the execution of the deed last mentioned, neither of the two daughters had reached the age of twenty-five years; but prior thereto and after they came of age they deeded to defendant their two-thirds for an adequate consideration. *Held*, that as there was no limitation upon their right to convey, and as upon such conveyance they ceased to have any interest in the execution of the power, which was created solely for their benefit, and which could only thereafter be executed for the benefit of defendant, the conveyance extinguished the power, and a subsequent conveyance in execution of it was inoperative.

It *seems* that the daughters could not have defeated the power of sale before reaching the age of twenty-five by simply electing to take and hold the real estate.

In April, 1869, the husband leased the premises to defendant, who entered and occupied under the lease until he acquired title as above stated. *Held*, that defendant was not thereby deprived of the right of setting up his title as a bar to the action.

*Hetzel* v. *Barber*, 6 Hun, 534; reversed in part.

(Argued January 31, 1877; decided March 20, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order denying a motion for a new trial and directing judgment upon a verdict. (Reported below, 6 Hun, 534.)

This was an action of ejectment to recover possession of certain premises situate in the city of Auburn, known as the "Dennis Place." Both parties claimed title through Louisa Easterly, deceased, who died seized of the premises in April, 1866, leaving a last will and testament and a codicil; the material portions of the will are as

follows: "The house and lot where I now live, with my husband and children, consisting of about three acres of land, lying south of Love lane and south-west of the corner of Court street, bounded on the south by the place hereinafter described, at present occupied by C. C. Dennis, I hereby give, grant and devise to my two children, Emma Frances Easterly and Anna Louisa Easterly, as a home for them, where they may reside with their father until they are married respectively, to be owned and possessed exclusively by them only after the decease of their father, to whom I hereby give and grant an estate in said premises for and during the term of his natural life, intending. hereby that the same shall be used as a home for my said husband and children, alienable by them all only after said children become of age. As for the said Dennis place, lying south of and adjoining the foregoing, consisting of about four acres of land, fronting on William street, I hereby give, grant and devise the same in equal parts to my said husband, John M. Easterly, and my two daughters, Emma F. and Anna L. Easterly, share and share alike; to whom also, in the said equal proportions, I give and bequeath all my personal property of every kind and description. I nominate and appoint my said husband, John M. Easterly, sole executor of this my last will and testament, and testamentary guardian of my said children, hereby authorizing and empowering him, at and after my decease, to sell and convey (both as owner and executor) by his deed, the whole or any part or parts of the said Dennis place above described, to any person or persons, and thereby giving good and sufficient title to the same; and I hereby order and direct my said executor, in case he makes such sale, to invest the portion of the proceeds going to my daughters in some good securities, and keep the same invested for them until after they severally become of the age of twenty-five years, when the same is to be paid to them with any accrued accumulation of interest."

The codicil was as follows: "Having heretofore, on the 29th day of April, 1865, executed my last will, bearing date

that day, and which is hereby affirmed, I desire, by way of codicil, to provide, and do therefore hereby provide and authorize my said executor therein named to sell and convey, at any time after my decease, either or both of the two pieces of real estate mentioned in the said last will, in his discretion, and his conveyance, as such executor, shall be sufficient to transfer and confirm the title thereto in the purchaser or purchasers thereof; and he is also authorized to invest the proceeds in any way which he may deem advantageous to the interest of my children and himself."

. The will and codicil were duly admitted to probate. On the 20th February, 1869, the said John M. Easterly sold and conveyed his individual interest in the premises to plaintiff; the deed was not recorded until December 27, 1871. In April, 1869, Easterly executed to defendant a lease of the premises for two years from May first thereafter. Defendant entered and occupied under the lease until he acquired title, as hereinafter stated. On May 11, 1869, a judgment was perfected against Easterly, and on January 14, 1870, the sheriff of Cayuga county, under and by virtue of an execution issued on said judgment, sold said Easterly's interest to John T. Pingree, who assigned his certificate of sale to defendant. In February, 1870, the two daughters mentioned in the will, who were then of age, but neither of whom had reached the age of twenty-five, by warranty deed conveyed to defendant an undivided two-thirds of the premises. On April 27, 1870, Easterly executed to plaintiff a deed, purporting to be in execution of the power contained in the will, conveying the whole premises to the plaintiff, which deed was duly recorded June 4, 1870. No mention was made in said deed of the former conveyance. This deed was recorded June 4, 1870. On April 17, 1871, the sheriff, in pursuance of the sale made by him as aforesaid, executed to defendant a deed of Easterly's interest, which was recorded on the same day. Further facts appear in the opinion.

The court held that plaintiff had title to and was entitled to recover possession of an undivided two-thirds of the

premises, and that defendant had title to the other one-third, and directed a verdict for plaintiff for an undivided two-thirds, to which defendant's counsel duly excepted. A verdict was rendered accordingly.

*Geo. F. Comstock* for the appellant. When the same person is exclusively entitled to a fund, whether in its unconverted shape or converted, and such person is of full age and competent to act, he has the right to take it in its unconverted form. (Leigh & Dalzel on Eq. Conv., 177 [5 L. Lib., 89]; 3 Atkins, 680; 1 T. Wass., 389; 1 Story's Eq. Jur., § 793; *Craig* v. *Leslie*, 5 Wheat., 577; 49 Barb., 128; 3 Whart., 62, 65; 1 id., 252, 265; 4 W. & S., 196.) The daughters, by their conveyance to defendant, deprived themselves of the right to the proceeds of any sale by the executor. (12 Barb., 113; *Sharpsteen* v. *Tillou*, 3 Cow., 651; *Jackson* v. *Jansen*, 6 J. R., 73.)

*J. J. Lamoree* for the respondent. The court did not err in ruling that the Storms mortgage was no bar to plaintiff's recovery. (*Jackson* v. *Crafts*, 18 J. R., 110; *Edwards* v. *Farmers' F. Ins. & L. Co.*, 21 Wend., 467; *Kortright* v. *Cady*, 21 N. Y., 343; *Campbell* v. *Parker*, 9 Bosw., 333; *Hartley* v. *Latham*, 1 Rob., 246.) Barber's deed from the *cestuis que trust* being on record when plaintiff took title under the trustee's deed, did not affect plaintiff's title thereunder. (*Reed* v. *Underhill*, 12 Barb., 111.) The deed from the *cestuis que trust* to defendant was no more than a deed of subrogation, and he is entitled only to the avails after an execution of the power vested in the trustee. (*Reed* v. *Underhill*, 12 Barb., 113; 4 Kent's Com., 355; *Hetzell* v. *Easterly* [4th Dept., January, 1873]; *Downing* v. *Marshall*, 23 N. Y., 397, 380; 5 Mass., 242; *Willis* v. *Sherral*, 1 Atk., 479; *N. Y. Dry Dock Co.* v. *Stillman*, 30 N. Y., 182; *Crittenden* v. *Fairchild*, 41 id., 289; *Kinner* v. *Rogers*, 42 id., 531; *Skinner* v. *Quinn*, 43 id., 99; 3 R. S., [5th ed.], 26, § 127; *Blanchard* v. *Blanchard*. 4 Hun, 287.) Defendant

having entered into possession as tenant to J. M. Easterly, he cannot dispute his right to the possession, nor the right of his alienee, but must first surrender possession. (*Bariet* v. *Thompson*, 7 D. & E., 488; 1 Taunt., 208; *Jackson* v. *Harper*, 5 Wend., 248; *Jackson* v. *Scissam*, 3 J. R., 499; 4 id., 210; *Love* v. *Simms*, 9 Wheat., 515; *Jackson* v. *De Watts*, 7 J. R., 158; *Brown* v. *Potter*, 17 Wend., 168; *Despard* v. *Walbridge*, 15 N. Y., 377.) Plaintiff being the alienee of J. M. Easterly, is entitled to maintain ejectment against defendant in his own name, after the expiration of the tenancy, and no attornment was necessary. (1 Am. L. Reg., 410; *Tilford* v. *Flemming*, 64 Penn., 300.) The power of the executor to sell continued until the whole land was sold, notwithstanding the title was, by the will, conveyed to the devisee, and the deed from the executor to plaintiff was valid. (*Crittenden* v. *Fairchild*, 41 N. Y., 289; *Skinner* v. *Rogers*, 42 id., 53; *Hetzel* v. *Easterly, supra ; Bradish* v. *Gibbs*, 3 J. Ch., 550; *Marlborough* v. *Godolphin*, 2 Ves., 78; *Cook* v. *Duckenfield*, 2 Atk., 362; 4 Kent's Com., 354, 337, 338; *Doolittle* v. *Lewis*, 7 J. R., 45.) The court erred in ruling and deciding as matter of law upon the evidence, that defendant, by virtue of the sheriff's deed, had good title to an undivided one-third of the premises in question. (*Jackson* v. *Town*, 4 Cow., 606; 1 R. S., 722, § 5; 4 Kent's Com., 181, 173; *Schmidt* v. *Hoyt*, 1 Edw. Ch., 652; *Tallman* v. *Farley*, 1 Barb., 280; 4 Paige, 15; 1 Hare's, 547; 3 R. S. [5th ed.], 30, § 163; id., 637, § 4; 1 R. S., 739, § 149; *Sage* v. *Cartwright*, 5 Seld., 49.) The purchaser at sheriff's sale was not protected by the recording act, unless the grantor had some interest which could pass by the prior recorded deed under which the purchaser claims protection. (*Jackson* v. *Town*, 4 Cow., 598, 603-607; *Bigelow* v. *Fink*, 17 Barb., 394; *Dickinson* v. *Smith*, 25 id., 102.) Defendant was not a *bona fide* purchaser without notice. (9 J. R., 169; 5 Barb. Ch., 151; 16 How. Pr., 119; 2 Hill, 461; *Ingalls* v. *Morgan*, 10 N. Y., 178; 15 id., 354.) The notice to Pingree of plaintiff's deed being sufficient to deprive defendant of the

character of a *bona fide* purchaser, priority of record was of no avail. (*Berry* v. *Mut. Ins. Co.*, 2 J. Ch., 603; *Ells* v. *Tousley*, 1 Paige, 280; *Jackson* v. *Sharp*, 9 J. R., 163; *Tuttle* v. *Jackson*, 6 Wend., 213; *Baller* v. *Viele*, 44 Barb., 166; *Fish* v. *Burch*, 5 Den., 187; *Schutt* v. *Large*, 6 Barb., 374, 383.)

EARL, J. Mrs. Easterly died seized of two parcels of land situate in the city of Auburn, one of three acres called the homestead, and another of four acres called the Dennis place. By her will, she devised the former parcel to her two daughters, Emma and Anna, subject to a life estate therein which she gave to her husband ; and she provided that during the life of her husband, it should be a home for him and her daughters, and that it should be alienable by them only after the daughters became of age. The latter parcel she devised in equal parts to her husband and two daughters, and authorized and empowered him to sell and convey it, and ordered and directed him in case of such sale to invest the portion of the proceeds going to her daughters in good securities and to keep the same invested for them until after they severally reached the age of twenty-five years, when he was to pay the same to them with the accumulations of interest. This controversy relates to the last parcel only.

An absolute fee in one undivided third of the Dennis place was thus given to the husband, and the power of sale did not attach to that. As the owner of the fee, he could dispose of that at will, and the power would have nothing to operate on. It was merged or absorbed in the fee which includes every power. (4 Kent's Com., 348; 1 R. S., 733, §§ 83, 85.) As to the other two-thirds, there was a general power in trust. (Part 2, chap. 1, title 2, art. 3, §§ 77, 94, of the Revised Statutes.) The donee of the power took no estate in the land; but the daughters took an absolute fee subject to the execution of the power. (*Reed* v. *Underhill*, 12 Barb., 113; *Crittenden* v. *Fairchild*, 41 N. Y., 289.) The testatrix intended that the power should be executed before her daughters reached

the age of twenty-five, as they were then to be entitled to the proceeds. After the execution of the power, by the terms of the will, Mr. Easterly, the husband, was to become trustee of the proceeds as personal estate. He was to invest it until the period for distribution, when he was to pay it over. The direction to accumulate the income was probably valid only until the daughters respectively should reach the age of twenty-one years. Then the accumulated income would have to be paid over, and thereafter the daughters would be entitled to the annual income, the trustee retaining and investing the principal until the period for distribution. (R. S., part 2, chap. 5, title 4, §§ 3 and 4; *Harris* v. *Clark*, 7 N. Y., 242; *Williams* v. *Williams*, 8 N. Y., 524; *Kilpatrick* v. *Johnson*, 15 N. Y., 322.) The provisions of the will as to the Dennis place were not altered by the codicil. The only purpose and effect of that was to extend the power of sale to the homestead also. The provisions of the will as to the investment of the proceeds of the Dennis place are not inconsistent with the codicil, and were not abrogated by it.

Having thus briefly construed the will, we will now proceed to consider the legal effect of its provisions and of the acts of the parties under it.

1. As to the one-third devised to the husband. On the 20th day of February, 1869, he conveyed this third to the plaintiff by a deed which was not recorded until December 27th, 1871. The Cayuga County National Bank recovered and docketed a judgment against him, May 11th, 1869. Execution was issued upon such judgment, and the sheriff thereby sold the land January 14th, 1870, and in pursuance of such sale executed a deed thereof to the defendant April 17th, 1871, which was recorded on that day, nearly a year before plaintiff's deed of the same land was recorded.

The defendant was a purchaser for a valuable consideration, and he must also be regarded here as a purchaser in good faith without any notice of the prior conveyance to the plaintiff. There was some evidence tending to show such notice; but the defendant as a witness positively denied it,

and the circumstances tended strongly to sustain such denial. At the close of the evidence defendant's counsel requested the court to submit certain questions of fact to the jury, but the request was declined, and the court held, as we must infer, upon the motion of the plaintiff, that he was as a matter of law entitled to recover two-thirds of the land.

It is a fair inference from what is stated in the case that at the close of the evidence the plaintiff requested the court to hold and decide that he was entitled to recover all the land claimed. He made no request to have any evidence submitted to the jury, and the court decided that he was entitled to recover two-thirds, and that the defendant was entitled to one-third of the land. This decision awarding one-third to the defendant must have been upon the assumption that he was a purchaser thereof without notice of the prior conveyance to the plaintiff. This assumption was not disputed, and we must infer that plaintiff assented that nothing was involved but questions of law. It cannot therefore be claimed here that the evidence should have been submitted to the jury, or that the facts were not as they were assumed to be. The claim is made, however, that the defendant has gained no preference under the recording act by the prior record of his deed from the sheriff, because the lien of the judgment attached to nothing, and he therefore took nothing by his deed. It is true that the plaintiff's deed gave him a title good and complete against the whole world, except a subsequent purchaser in good faith, and for a valuable consideration whose deed was first recorded. (1 R. S., p. 739, § 144; p. 756, § 1.) As to such a purchaser plaintiff's deed is void, and the title is in law treated as remaining in the grantor until after the second deed was given. The second deed is just as effectual for every purpose as if the first deed had not been given.

A sheriff's deed given in pursuance of a judgment and a sale upon execution is treated as if given by the judgment debtor himself. It conveys precisely what he could have conveyed when the judgment was docketed. The sheriff by

authority of law takes his property and conveys it to satisfy his debt, and the transfer of title is the same as if the sheriff had in fact acted as the authorized attorney of the debtor. The grantee in such cases holds, not under the sheriff, but under the debtor, and the deed when recorded is protected by, and has the benefit of the recording act. (*Jackson* v. *Chamberlain*, 8 Wend., 620; *Jackson* v. *Post*, 15 Wend., 588, 596; *Hooker* v. *Pierce*, 2 Hill, 650; *Lessee of Cooper* v. *Galbraith*, 3 Wash. C. C. R., 546, 550; *McKnight* v. *Gordon*, 13 Rich. Eq., 222, 239.)

Certain other facts must now be noticed. After the sale by the sheriff and his certificate of the sale had been filed in January, 1870, Easterly, on the 27th day of April, 1870, by a deed purporting to be in execution of the power contained in the will, conveyed the whole of the Dennis place to the plaintiff, as well the one-third devised to him as the two-thirds devised to the daughters, and that deed was recorded June 4, 1870, several months before defendant's deed of the one-third was given or recorded. It is claimed that this last deed being first executed and recorded, gives plaintiff priority of title over the defendant. But that deed had no validity. When Easterly executed it he had no title to convey. Plaintiff got no more by it than he could have received from an entire stranger to the title. Easterly's first deed was valid and effectual as between him and plaintiff. It conveyed a good title as against the whole world, but a subsequent purchaser in good faith and for value, whose deed should be first recorded. He had nothing left to convey to the plaintiff or any one else but such a purchaser. The power gave no force to the deed, as, for reasons above stated, that had no validity. Even if the power were otherwise valid, Easterly, as the owner of the fee, having made a conveyance of the land, there was nothing left for the power to operate on; it was extinguished, and could not be executed in derogation of the conveyance. (Wash. on Real Prop. [3d ed.], 593; 4 Kent's Com., 347.) If the last deed be treated as sufficient to convey whatever interest he had as owner of the

fee, the same result follows for reasons above stated. The record would not help plaintiff, as it was the record of a wholly inoperative deed, containing no reference whatever to the former deed. Such a deed certainly could not destroy rights which the defendant had acquired at the sheriff's sale, subsequently consummated by deed. The decision, therefore, that defendant was entitled to this one-third of the Dennis place was right.

2. As to the two-thirds devised to the daughters. After they came of age, but before either of them was twenty-five years of age, for an adequate consideration paid to them, they conveyed the two-thirds to the defendant by warranty deed dated February 8 and recorded March 9, 1870. Afterward, before either of them reached the age of twenty-five, Easterly executed to the plaintiff the deed above mentioned, purporting to be in execution of the power, and the most important question to be determined in this case is, which of these deeds conveyed the title?

This is a case where land is directed to be converted into money by the exercise of the power conferred upon Easterly. The general rule in such cases is that the persons entitled to the money being of lawful age, can elect to take the land if the rights of others will not be affected by such election. (Leigh & Dalzel on Eq. Con., 177 [5 Law Library, 89]; 1 Story's Eq. Jur., § 793; *Crabtree* v. *Bramble*, 3 Atkyns., 680; *Seeley* v. *Jago*, 1. P. Wms., 389; *Craig* v. *Leslie*, 3 Wheat. U. S. R., 577; *Smith* v. *Starr*, 3 Wharton, 62, 65; *Burr* v. *Line*, 1 Wharton, 252, 265; *Stuck* v. *Mackey*, 4 Watts and Serg., 196; *Mandlebaum* v *McDonell*, 29 Mich., 78.) But that they may make such election, they must upon the sale of the land at once be entitled to the money. As they are entitled at once to the money, they could at public or private sale offer more for the land than any one else, and could thus, if the donee of the power acted honestly and fairly, prevent a sale to any one else, or they could take the money and at once again invest the same in land. Hence the law very properly gives them the right to elect to take

the land, and it must be presumed to have been the intention
of the donor of the power that they should have such elec-
tion.   But in this case the donee of the power had the right
under the will, and it was made his duty to hold and invest
the proceeds until the daughters reached the age of twenty-
five years.   Therefore in the case of a sale before they reached
that age, they were not at once entitled to the proceeds, and
it cannot be presumed that the donor intended that they
should have the election before that age to keep the land,
and the law does not give them such election.   It is true
that they were of lawful age, and were the sole parties bene-
ficially interested in the property; but the will of the donor
as to the disposition of the proceeds could legally have effect.
Hence, while it is not necessary to actually decide it in this
case, I am of opinion that the daughters could not have
defeated this power of sale before they reached the age of
twenty-five years by simply electing to take the real estate
and keeping it as such.

But they did not keep the real estate.   They conveyed it
to the defendant.   There was no limitation upon their right
to convey in the will, and no prohibition in the statute.
There never was any doubt of the right of persons so
situated to convey all their interest in the real estate and its
proceeds.   The fee being vested in them, subject to the execu-
tion of the power, a prohibition of alienation by them, until
they should reach the age of twenty-five years, would have
been ineffectual, as repugnant to the estate vested in them.
(*Lovett* v. *Gillender*, 35 N. Y., 617; *Mandelbaum* v.
*McDonell*, *supra.*)   It follows that after the conveyance by
them, they ceased to have any interest in the execution of
the power.   They could no longer compel its execution, nor
claim the proceeds of a sale of the land.   In case the power
could thereafter be executed, the sale would be exclusively
for the benefit of the defendant, and the proceeds would
belong to him.   (*Reed* v. *Underhill*, *supra.*)   Easterly had
a mere naked or collateral power with no beneficial interest
whatever in the land or its proceeds.   In such a case a

power can only be exercised in the manner and for the precise purpose declared and intended by the donor. A power to sell land devised to A, and invest the proceeds for his benefit, cannot be exercised for the benefit of B, or, after A's death, for the benefit of his heirs. A power to sell for the payment of legacies, cannot be exercised for the payment of debts. The extent of a power, like the extent of an agency created by a written power of attorney, must be sought for in the instrument conferring the power, and authority not found there does not exist. When the purpose for which any agency or power was created, has become wholly unattainable, the power or agency ceases to exist. Neither can be exercised for a purpose not intended. Here the power was created to sell lands devised to the daughters, and invest the proceeds for the sole benefit of the daughters who were entitled to the whole proceeds of the sale, and when a sale became impossible for their benefit, the power was gone.

In *Jackson* v. *Jansen* (6 J. R., 73) a power was given to executors to sell real estate, place the proceeds at interest, and pay the interest to the testator's wife during her life, and the principal to his son on her decease. The power remained unexecuted during the life of the widow, but after her decease the executor sold the land. It was held that by the death of the widow the main purpose of the power had ceased, and that the power itself was, therefore, extinct, and that the conveyance in execution of it was inoperative.

In *Sharpsteen* v. *Tillou* (3 Cowen, 651) the testator's will created a power to sell land to pay £150 to his son E.; £150 to his son I., and all the residue to his five sons equally, including E. and I. E. could not take his £150, because he was a witness to the will, I. could not take his because he died before the power to sell was or could be executed. It was held that the power had failed and become extinct, because its main object could not be accomplished, in that, the proceeds of the sale could not be disposed of as the will intended and prescribed, and that the conveyance by the

donees of the power, in execution thereof, was inoperative and void.

In *Reed* v. *Underhill* (*supra*), the land descended to the testator's five children, but the will gave the executor power to sell it for the purpose of paying debts, providing for his widow's dower, and then to divide the proceeds among his five children. Before the time appointed for the execution of the power, one of the children sold and conveyed his interest for a valuable consideration. The power was subsequently executed by a sale under it, and a certain sum, after paying the debts of the estate and satisfying dower, remained which would have belonged to the one who had sold out, if he had not sold. It was held that his grantee was entitled to this sum. But in that case there were other and unfulfilled trust purposes which continued to feed and supply the power. The main purpose of the power had not failed, and hence no question was made that the power was properly executed.

It matters not so far as it affects the power, that the daughters were deprived of their interest in the land and the proceeds by their own voluntary act. It is sufficient that their interest was legally divested.

It may be said that the views thus expressed defeat the intention of the testatrix. This may or may not be true. She may have expected that the power of sale would be executed during the minority of her daughters or at some time before they could sell, or had sold the land, willing that they should sell whenever they were able, as she placed no restraint upon their alienation. But even if the sale by the daughters, and the realization by them of the proceeds before the age of twenty-five years does defeat the intention of the testatrix, it matters not so long as it was legally defeated. We must determine the legal effect of the provisions of the will, and the supposed intention of the testatrix cannot stand in the way of such effect. A testator may devise land absolutely in fee, and express an intention that for some period it shall be inalienable by the devisee by prohibiting its alien-

ation. But such intention cannot have effect because it contravenes a rule of law. The testatrix in this case left it in the power of her daughters, after they came of age, to defeat the power of sale. If she had desired to make the land inalienable until they reached the age of twenty-five, she could have devised it to her husband in trust for her daughters, until the power of sale should be executed.

We are therefore of opinion that the court below erred in holding that the plaintiff obtained the title to the two-thirds under the deed to him.

3. There is a further point applicable to both parcels of land, which has not yet been considered. In April, 1869, Easterly assumed to rent the Dennis place to the defendant at an annual rent of $800, for two years from May first. The defendant paid the rent and entered under that lease, and occupied under it until he acquired the title as hereinbefore stated. The claim on the part of the plaintiff is that the defendant having entered into possession of the premises as tenant of Easterly, cannot dispute his right to the possession, nor the right of his alienee, without first surrendering the possession. Without, in any way, disputing the general doctrine here contended for, there are plain and simple answers to the claim thus made. As to the one-third, as has already been shown, defendant's title is under a purchase at sheriff's sale during the term, valid as against both Easterly and the plaintiff. A title thus acquired terminates and extinguishes the landlord's title, and can be set up as a bar to an action for rent, or an action to recover possession of the demised premises. (*Jackson* v. *Rowland*, 6 Wend., 670; *Nellis* v. *Lathrop*, 22 id., 121; *Despard* v. *Walbridge*, 15 N. Y., 374.) As to the two-thirds, the plaintiff does not claim under any title Easterly ever had. The only title he has is such as the execution of the power gave him, and, as has been shown, that gave him no title, and he therefore has no standing upon which he can base a claim to recover.

The conclusion is therefore reached that plaintiff was not

entitled to recover any portion of the premises claimed in the complaint.

That portion of the judgment adjudging that defendant was entitled to one undivided third of the premises should be affirmed, and the balance of the judgment, as appealed from by the defendant, should be reversed and judgment ordered for the defendant, dismissing the complaint with costs.

All concur.

Judgment accordingly.