SAMUEL M. WERNICK et al., Plaintiffs, *v.* MEHL REALTY Co., INC., et al., Defendants.

Supreme Court, Special Term, Kings County, June 9, 1947.

*Anthony Romano* for plaintiffs.

*Emanuel Mehl* for Mehl Realty Co., Inc., defendant.

*Charles E. Murphy, Corporation Counsel (Meyer Schieps* of counsel), for City of New York.

FROESSEL, J. This is an action by a tenant and his wife to foreclose a tax lien acquired by them from the City of New York affecting the property of his landlord. The only issue remaining is the one presented by the sixth defense of the answer of the defendant landlord, Mehl Realty Co., Inc., which is also denominated a counterclaim. In this defense, said defendant alleges that on or about February 20, 1939, it, as landlord, leased to the plaintiff, Samuel M. Wernick, as tenant, a portion of the premises involved in this action for the term of ten years, commencing May 1, 1939; that the said tenant in said written lease covenanted and agreed that at the expiration of the said term he would surrender the premises to the landlord; that the tenant went into and continues in possession under said lease; that when said lease was made, the tax lien sought to be foreclosed herein was an existing lien against the said premises in favor of the City of New York; that on or about August 7, 1945, the city assigned and transferred said lien to the plaintiffs; that thereafter the landlord offered to pay said plaintiffs the amount paid by them with interest and costs, upon reassignment of the lien; and plaintiffs refused.

It is urged in this defendant's brief that " under the principle of estoppel, the plaintiffs, being in possession of the premises as the tenants of Mehl Realty Co., Inc., are precluded from foreclosing the tax lien against it and thus cutting off and defeating the title of their landlord. The utmost that they can claim is reimbursement for the moneys expended in acquiring the lien; and upon tender of that amount, equity will consider them trustees of the said lien for the benefit of their landlord." The regularity of the tax sale is not questioned.

The facts are virtually undisputed. Defendant-landlord acquired title to the premises in question in *1923*. It never paid any taxes to the city since *1924*, though it collected the rents meanwhile. It leased one of the several stores on this property to the plaintiff tenant in *1939*, for a period of ten years, under the terms of which the *landlord* was obligated to pay taxes and assessments. Said tenant has continued in possession ever since. The proof further showed that by virtue of the landlord's failure to pay taxes, assessments and water rates prior to February 2, 1932, aggregating $23,036.63, the City of New York was obliged to retain the tax lien for said amount, at a public sale held on September 6, 1933, there being no bidders. Thereafter, and in 1945, the City of New York offered the said

tax lien at a public sale, with competitive bidding, and the plaintiffs became the successful bidders, acquiring said lien for the sum of $34,900 on August 7, 1945.

The evidence also shows that in addition to the notice by publication given the defendant landlord and all others interested, pursuant to law, prior to said sale to the plaintiffs, Samuel M. Wernick had a conversation with the landlord's attorney, Emanuel Mehl, who is virtually the owner of the corporate landlord, telling him, in effect, that Wernick had heard that the city was going to sell the building and he would like to know what the landlord was going to do about it, inasmuch as Wernick had his store there, and did not " want to be holding the bag ", and Mehl replied that the city could not sell the building. Said attorney admitted on the witness stand that some such conversation took place, in the course of which he said that he thought a sale " was most improbable, because the City was collecting the rent ", but claimed that the conversation took place in August, after and not before the sale. The tenant also testified that Mehl promised to come to see him shortly following the conversation, but did not do so. At the trial, Mehl showed that he had ample resources in savings banks to acquire the lien, if he had chosen to do so.

The evidence also disclosed that said defendant corporation was dissolved for failure to file New York State franchise tax returns, and by gubernatorial proclamation, in 1929. By reason of its utter disregard of its obligation to pay any taxes over this long period of eighteen years, the city found it necessary to apply for and secure the appointment of a receiver in 1942, and since then the receiver has been in possession collecting the rents. From then on, it would appear that the defendant completely abandoned the property. As a matter of fact, its attorney, the said Emanuel Mehl, appeared as attorney for one of the tenants, resisting the claim of the city in its effort to collect rent from said tenant. The landlord also failed to pay Federal taxes.

The general rule is well settled that a tenant who has once acknowledged his landlord's title and taken and held possession under him, and who has not surrendered his lease, nor been evicted from the premises, and who can prove no fraud against the landlord nor any transfer of the latter's title after the lease began, is precluded to deny that the landlord under whom he has so held and claimed is the owner of the property. (2 Reeves on Real Property, § 639, pp. 896–897; *Tilyou* v. *Reynolds,* 108 N. Y. 558.) This rule has its origin in the feudal fealty anciently

existing between a landlord and his tenant. At common law, a lessee by indenture was estopped to deny the title of his lessor — a form of estoppel by deed. (2 Coke on Littleton, by Thomas, p. 415; *Kempe* v. *Goodall,* 2 Ld. Raym. 1154; *Vernam* v. *Smith,* 15 N. Y. 327.) As equitable principles were embraced into our law, the common-law rule was extended so as to become of general application affecting all kinds of tenancies. (2 McAdam on Landlord & Tenant [5th ed.], p. 1482; 2 Reeves on Real Property, § 639.)

As was said long ago by Lord Chief Justice WILLIES in *Syllivan* v. *Stradling* (2 Wils. 208, 214): " * * * I cannot help thinking but they (the Legislature), intended to take away the plea of *nil habuit,* &c., as if they had said, after a tenant has enjoyed the land by a demise or permission of the landlord, he shall not be permitted to pry into the title, and pick holes in settlements and wills."

This rule of estoppel, as recognized today, is not without its qualifications. As Professor Reeves puts it in his excellent work on Real Property (Vol. 2, § 639, pp. 897–898): "The estoppel, moreover, rests on the *permissive possession* of the tenant under the landlord. If, therefore, the landlord's title, good and recognized at the beginning of the release, has terminated since that time, the tenant is no longer there by his permissive possession, and may be heard to prove such termination. And this is true even though the tenant himself has acquired the landlord's former title, as, for example, by purchasing it at a sale for taxes, or on execution." (Citing *Nellis* v. *Lathrop,* 22 Wend. 121, and *Hetzel* v. *Barber,* 69 N. Y. 1, 8, 15.)

As to the right of a tenant to acquire title not inconsistent with the landlord's title at the commencement of the tenancy, an interesting note reviewing the authorities in the United States appears in 53 Lawyers Reports Annotated 934–935:

"The familiar rule that a tenant, while remaining in possession of the premises, is estopped to deny the landlord's title, merely prevents the tenant from asserting a title that is inconsistent with, and involves a denial of the validity of, the title of the landlord at the commencement of the tenancy; it does not prevent him from showing that the title which the landlord then held has since been transferred, defeated, or extinguished, either voluntarily by the landlord, or by operation of law. This limitation or explanation of the rule is established beyond dispute. [Citing numerous cases.] The cases thus far cited merely go to the extent of permitting the tenant, or one holding under

him, to assert, as against the landlord or one holding under him, that the title which the landlord had at the commencement of the lease has devolved upon, or passed to, some third person. The right of the tenant, himself, to purchase and assert such title presents a somewhat different question."

At page 937 the note continues: " * * * the rule that estops a tenant to deny his landlord's title without first surrendering possession does not prevent him from acquiring, at or through a judicial sale during the tenancy, the title that the landlord held at the commencement of the tenancy, or from holding that title in his own right and adversely to the landlord. Any objection that may be made to the acquisition and assertion of such a title by the tenant must be based upon some supposed relation of trust and confidence between the parties, which, while it would not prevent the tenant from showing that a third person had acquired the landlord's title, would disqualify him to acquire that title himself and hold it as against the landlord. The great weight of authority, however, denies the existence of any such disqualifying relation, and establishes the proposition that a tenant, or one claiming under him, may, if he acts fairly, acquire the title that the landlord held at the commencement of the tenancy by purchase at a judicial sale or from one who holds under such a purchase." Among the numerous cases cited in support of this note are *Nellis* v. *Lathrop* (*supra*), *Hetzel* v. *Barber* (*supra*) and *Jackson* v. *Rowland* (6 Wend. 666). As to a title derived from a tax sale during the tenancy, the note continues at page 939: " The cases are all agreed that a tenant cannot acquire a valid title as against the landlord, by virtue of a tax sale, during the tenancy, for taxes which he (the tenant) had agreed to pay. [Citing numerous cases.] There is considerable conflict among the authorities upon the question whether a tenant who has not agreed to pay the taxes, and who is not legally bound to pay them, may acquire, and hold adversely to the landlord, a title based on a tax sale during the tenancy." Among the cases cited in support of the proposition that a tenant may acquire such title is *Sharpe* v. *Kelley* (5 Denio 431).

An examination of the New York cases cited in the foregoing note discloses that in *Nellis* v. *Lathrop* (22 Wend. 121, *supra*), it was held that a tenant may purchase the leased property at a sale under an execution against the landlord and assert such title as a defense in an action for rent subsequently accruing, or he may purchase a portion of the premises at such sale and set up such purchase to mitigate the damages in an action

for rent. Said the court (p. 123): "* * * a purchase or acquisition of title under a judgment against the lessor is the same thing as if he had granted by deed. It is, to be sure, acquiring title indirectly and by operation of law, from the lessor; but it comes through his act and consent, or his neglect, and is therefore the same in legal effect as if he had granted or devised the reversion."

In *Hetzel* v. *Barber* (69 N. Y. 1, *supra*) it was held that a tenant may acquire title at a sheriff's sale under an execution against the landlord, and the title thus acquired terminates and extinguishes the landlord's title, and may be set up as a bar to an action for rent, or one to recover possession of the demised premises. (Citing *Nellis* v. *Lathrop, supra; Jackson* v. *Rowland, supra.*)

In *Jackson* v. *Rowland* (6 Wend. 666, *supra*) it was held that a tenant may purchase the leased property at a sale under an execution against the landlord and assert such title in an action of ejectment.

In *Sharpe* v. *Kelley* (5 Denio 431, *supra*) it was held that a tenant cannot in an ejectment suit by the landlord assert a title acquired under a tax sale prior to the execution of the lease; but he may purchase at such sale made after the execution of the lease or he may take an assignment from the purchaser at such sale.

In the case at bar the taxes in question were the obligation of the landlord. The tax lien was offered for sale in 1933 prior to the making of the lease here but there were no bidders and the city was obliged to retain the lien. When said lien was reoffered in 1945 at a public sale and with competitive bidding, and after due notice, the plaintiffs were the successful bidders. Accordingly, this comes within the rule asserted in *Sharpe* v. *Kelley* (5 Denio 431, 433, *supra*): " Although a tenant, he might have purchased at the corporation sale, had it been made after the execution of the lease, and he also might have taken an assignment from a purchaser at such a sale. This would not have been acting in hostility to the title of his landlord, but in consistence with it; as much so as a purchase at sheriff's sale, or directly from the landlord himself would have been." (Citing *Nellis* v. *Lathrop, supra.*)

The research on the part of counsel and the court have not revealed any other New York decision determinative of the question here, but under the circumstances presented in this case, and in the light of the authorities heretofore discussed, I am compelled to conclude that the plaintiffs are entitled to judg-

ment. By bringing this action they are not questioning the landlord's title but recognizing it. There is no breach of fiduciary relationship on their part; neither is there fraud or bad faith. The plaintiffs are asking a court of equity to recognize a right which they have acquired, pursuant to law, and which the landlord has created by his willful and reckless neglect on the bare hope that sometime, somehow, if the occasion prove propitious, it might purchase the lien for a fraction of its value. In the meantime its neglect to pay Federal, State and city taxes, and its general conduct toward this property in permitting the receiver of this court to assume control over a period of years, without any effort on its part to take some single step toward reacquiring possession, virtually amounted to abandonment thereof, exposing meanwhile the tenants to the peril of losing their leases. To deny relief to the plaintiffs here would be a denial of justice, and would put a premium on a landlord's conduct that no chancellor could reasonably approve. Accordingly, the plaintiffs may have judgment, together with the costs and disbursements of this action. The landlord-defendant's counterclaim is dismissed upon the merits. Submit judgment on notice.