SUSAN ARMSTRONG et al., Executors, etc., Respondents, *v.* ESTHER McKELVEY, et al., Appellants.

104  179
116  246

The will of S. directed his executors to sell his real and personal estate, and, after paying his debts, funeral expenses and certain legacies, to divide the balance among the defendants herein. The executor sold and conveyed the real estate to one B. Defendants thereupon brought an action against the executors and B. to set aside the conveyance. The judgment therein granted the relief sought, and also decided that the land descended to the devisees, subject to the execution of the power, as the time for the execution thereof had expired, and that they were entitled to the possession as rightful owners, freed from the trusts. In an action under the Code of Civil Procedure (§ 1843) to charge defendants as such devisees with a debt of the testator. *Held,* it was to be assumed that the provision, above referred to, was inserted in said judgment at the request and by the procurement of the defendants and when they took possession under the judgment this established their election to avoid a sale and take their legacies in the land itself instead of the proceeds; that they had the right to do this, no other rights intervening, or being prejudiced; that it might be, while this reconversion changed the legatees to devisees, it did not divest the heirs-at-law of their legal title, yet such legal title was purely formal, and the effect of defendants' election was, at least, to vest in them the equitable ownership and the entire beneficial interest, and therefore the action was maintainable.

The provision of said Code, under which the liability of devisees in such case arises, does not require, as a condition, that the legal title shall have passed, they are made liable " to the extent of the estate, interest and right in the real property which  *   *   *   was effectually devised to them."

Aside from the provision in question, the will gave legacies to two of the defendants. The judgment herein, in making the apportionment of plaintiffs' claim, added to the share of each of these defendants the proportionate part of the legacies given them in excess of their co-tenants. *Held* no error; that having chosen to take their entire legacies in land, they became liable to creditors under the statute to the extent awarded.

The allowance as an equitable offset, to reduce a demand in suit of an item, which cannot be allowed as a legal offset or counter-claim, is only proper where the equity invoked is entirely clear and certain, where other remedies are impossible, and where the demand allowed is put beyond reasonable doubt.

(Argued December 15, 1886; decided January 18, 1887.)

Appeal from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made January 5, 1886, which affirmed a judgment in favor of plaintiffs, entered on the report of a referee. (Reported below, 39 Hun, 213.)

The action was brought originally by the plaintiffs' testator to charge the defendants as devisees of one Robert Smith with the payment of a debt against him.

By his will Smith bequeathed to the defendant, Jennie McKelvey, $200, and to the defendant, Esther McKelvey, $200. He directed the executor to provide a headstone for his grave. The third clause of the will is as follows : " I hereby order my executor to sell all my real and personal property at public or private sale as he may think best to do, within eighteen months after my death, and the proceeds and avails arising from the sale of my real and personal property after the legacies above mentioned are paid, and my just debts, funeral expenses and grave stone are paid, to divide the balance equally between the following persons," naming the defendants.

The testator died seized of real estate of the value of upward of $9,000, which the executor sold and conveyed to one Hartman. In an action brought by the defendants in this action against the executor and Hartman for that purpose, the sale

and conveyance were set aside, and the referee before whom that action was tried, amongst other things, found and determined and it was by the judgment therein declared, that the land descended to the devisees (the defendants in this action) subject to the execution of the power; that the period in which the executor was empowered to sell having expired, he as such, or as trustee, could not execute the power, so as to give title to a purchaser, and that the plaintiffs in that action were entitled to the possession of the premises as the rightful owners thereof discharged and released from the said trust.

The testator, at the time of his death, was indebted to one Pridmore, the latter in an action against the executors, recovered a judgment thereon, and in proceedings had before the surrogate to obtain settlement and application of the personal property of the estate, it appeared that there was none to apply upon his claim. He afterwards assigned the judgment and the debt for which it was recovered to the plaintiffs' testator, who died, and the plaintiffs were substituted during the pendency of the action.

Further facts are stated in the opinion.

*James Wood* for Appellants. When a testator directs his land to be sold, and the proceeds divided, the obvious purpose is a sale for the convenience of division, and the beneficiaries take their several interests as money, not as land. (*Lorilliard* v. *Coster*, 5 Paige, 172, 207; *Bolton* v. *De Peyster*, 25 Barb. 539; *Arnold* v. *Gilbert*, 5 id. 190; *Meaking* v. *Cromwell*, 5 N. Y. 136; *Johnson* v. *Bennett*, 39 Barb. 237.) The title vested in the heirs-at-law of the testator, subject to be defeated by the execution of the power. (*Catton* v. *Taylor*, 42 Barb. 577; *Germond* v. *Jones*, 2 Hill, 569; Willard on Real Estate, 261; Williams on Ex'rs, 578; 4 Kent's Com. 320; *People ex rel. Shaw* v. *Scott*, 8 Hun, 566; *Prentice* v. *Janssen*, 79 N. Y. 478.) An estoppel by judgment in a former action, arises where the same matter was at issue therein, and was either litigated by the parties and determined; or might have been litigated and a decision had upon

it. (*Smith* v. *Smith,* 79 N. Y. 634; *Stowell* v. *Chamberlin,* 60 id. 272; *McFadden* v. *Ross,* 34 Alb. L. J. 34; *Munday* v. *Vail,* 34 N. J. L. 418; *Fairchild* v. *Lynch,* 99 N. Y. 359; *King* v. *Chase,* 15 N. H. 9; S. C. 41 Am. Dec. 675; *Wood* v. *Jackson,* 8 Wend. 9; S. C. 22 Am. Dec. 603; *Smith* v. *McCool,* 16 Wall. 560; Bigelow on Estoppel, 92.) The general rule is that the issuable facts or matters, upon which the plaintiffs' case proceeded, determine what was at issue, unless it appears, from an examination of all the pleadings in a given case, that other matters were brought forward, and thus became necessarily involved and determined in the suit. (*Goble* v. *Dillon,* 86 Ind. 327; *Griffin* v. *Wallace,* 66 id. 410; *Davis* v. *Brown,* 94 U. S. 423; *Russell* v. *Place,* id. 605.) The defendants were in no way concluded or affected by the judgment which Pridmore obtained against the executor, not being parties to that action or privies to it. (*Sharp* v. *Freeman,* 45 N. Y. 802.) When there are mutual demands between the parties, which cannot be set off under the statute, but which a court of equity may compensate or apply in satisfaction of each other, without interfering with the equitable rights of any person, the fact that one of the parties is insolvent has frequently been held a sufficient ground for the exercise of equity. (*Coffin* v. *McLean,* 80 N. Y. 561; *Smith* v. *Felton,* 43 id. 419, 423.)

*J. B. Adams* for respondents. The amount to be paid was ascertained under the contract by a mere computation, and for default in payment thereof interest is chargeable. (*Still* v. *Hall,* 20 Wend. 51; *Van Rensselaer* v. *Jewett,* 2 N. Y. 135; *De Lavallette* v. *Wendt,* 75 id. 579; *Purdy* v. *Phillips,* 11 id. 406.) Defendants had a right to elect to take the real estate as such instead of its proceeds. (*Prentice* v. *Janssen,* 79 N. Y. 478).

Finch, J. The opinion of the General Term, upon an appeal to that tribunal, is an adequate and accurate solution of the questions involved and leaves for us only the duty of

testing the criticism with which it is assailed. The argument against it in the end comes down to a single point, which challenges the proof relied upon to establish a reconversion of the personal estate into land. It begins with the proposition that the will of the testator gave to the defendants the price or proceeds of the real estate, effecting an equitable conversion, and the legal title to the land descended meanwhile to the heirs-at-law, who are not identical with the legatees; and that the sale by the executor, when set aside by the court, simply restored the *statu quo*, and the judgment rendered, so far as it went beyond that relief, was outside of the issue and bound nobody as a record, or by way of estoppel. The argument then, assuming that the legal title remains yet in the heirs-at-law, denies that the legatees have received either the price of the land or the land itself, and so insists that the necessary facts were not proven to establish a liability to the creditor. It is at this point that collision with the opinion of the General Term for the first time begins, since that opinion distinctly concedes the descent of the legal title to the heirs-at-law, and does not hold that the judgment, in so far as it decrees a reconversion into land and a title to that land in the defendants, is binding upon them to its full extent either by its direct force or by way of estoppel. It uses it in another manner and for a different purpose. It assumes with entire accuracy, that the provisions referred to were inserted in the judgment, at the request and by the procurement and with the full assent of the defendants, and established their choice and election to avoid a sale and take their legacies in the land itself, instead of the proceeds, when they took possession of the property as their own and in accordance with the terms of the judgment. This they were at liberty to do, no other rights intervening or being prejudiced by the act. (*Hetzel* v. *Barber*, 69 N. Y. 1; *Prentice* v. *Janssen*, 79 id. 478.) It may very well be that, while this reconversion changed the defendants from legatees of money to devisees of land, the change did not divest the heirs-at-law of their legal title, and *ipso facto* transfer that title to the

defendants, as might easily be held where the devisees and heirs-at-law were absolutely identical. But that inquiry need not be pursued. The legal title which descended was purely formal, utterly barren and naked, and the effect of defendants' election was, at least, to vest in them the equitable ownership of and the entire beneficial interest in the land, and enable them at any moment to require and compel from the holders of the formal title its complete transfer. The provisions of the Code, under which the liability of devisees arises (§ 1843), do not require as a condition that the legal title shall have passed. Such devisees are made liable "to the extent of the estate, interest and right in the real property which descended to them from, or was effectually devised to them by the decedent." There was such effectual devise to them of the entire beneficial interest in the land if they chose so to accept it. The donor must be understood to have given them that option (*Hetzel* v. *Barber, supra*), and they were at liberty to take, and could do so effectually, in the character of devisees. The real assault, therefore, upon the General Term opinion respects the proof of that election and is in the main concentrated upon the assertion that the defendants had not taken possession of the land after the judgment and as the owners, which that judgment declared them to be, and that the finding of the referee to that effect was entirely without evidence to support it. But the fact was admitted by the pleadings and not a controverted issue. The complaint alleged "that after the entry of said judgment, as aforesaid, the defendants in this action entered into possession of the aforesaid real estate, by themselves, their agents or lessees, and have ever since continued in such possession, and that they are still the owners of such real estate as such devisees thereof as aforesaid." The answer discloses no denial of the allegation. It asserts only that when the action was *commenced* "one Andrew McKelvey was in the possession and occupancy of the said real estate * * * under and by virtue of a lease made and executed to him by the said Robert Smith in his lifetime; that the term created by said lease

expired on the first day of April, 1875 ; that since the expiration of said lease the defendants, Jennie McKelvey and Esther McKelvey, have lived on the said premises." The answer further " admits the allegations in said complaint contained, which are consistent with the allegations herein contained in the first and second subdivisions of this answer." And so the averment of the complaint stands not only without denial but affirmatively admitted, for the alleged lease of McKelvey is said to have ended in April, 1875, and the judgment and entry of defendants did not occur until the next year. On the main question in the case, therefore, we are unable to see that the General Term opinion has been in any respect justly criticised.

Objection is made to the apportionment among the devisees which added to the share of two of them the proportionate part of legacies given to them in excess of their co-tenants. The consequent difference is so small as to be almost trifling, but it seems to us a sufficient answer that having chosen to take their entire legacies in land they became liable under the statute to the extent awarded so far as creditors were concerned, whatever may be their equities as against their co-tenants upon a partition.

A final claim is made that the courts below erred in not allowing an equitable offset founded upon the proof as to the delivery to Pridmore for safe-keeping of his own notes payable to the testator and of certain amounts of money belonging to him. It is not claimed that these items could be allowed as a legal offset or counter-claim, but that the court upon principles of natural equity may use them in reduction of plaintiff's demand. That power should be very cautiously exerted and only in a case where the equity invoked is entirely clear and certain. It is never justified save where other remedies are impossible and where the demand allowed is put beyond reasonable doubt. In the present case we do not even know that the plaintiff's notes were due and payable or drew interest. If not there is no equity in lessening his term of credit and compelling him to pay in advance of his contract.

(*Lindsay* v. *Jackson*, 2 Paige, 581, 585.)  It does not appear that the money deposited has ever been demanded, or that Pridmore is insolvent or that his debt, if it be one, may not be recovered.  The facts shown raise rather a reasonable suspicion of a right than clear and controlling proof of its existence.  It is not to such a case that the doctrine of natural equity should be applied.

The judgment should be affirmed with costs.

All concur.

Judgment affirmed.