MICHAEL McCORMICK, as Administrator, etc., of THOMAS McMANUS, Deceased, Appellant, v. JAMES SULLIVAN, Respondent.

*Claims against an intestate — set-off against debts due the deceased — an equity insufficient in itself to found an action upon.*

A party cannot set off against a debt due from himself, at the time of an intestate's death, a claim against the intestate not then existing or owned by himself; nor can a cause of action be defeated by a mere equity that is not in itself sufficient to found an action upon.

In an action brought to recover the amount of a balance of money received by the defendant from the plaintiff's intestate, it appeared that the defendant received from plaintiff's intestate a certificate of deposit for $500, with instructions to collect that amount, and pay out $107.50 thereof, and to return the balance to him; that the defendant collected $500 from the bank, and paid out of such sum $107.50 as directed; that the intestate died the day the defendant received the money from the bank; that a day or so before he received the certificate from the deceased the defendant had indorsed a note as surety for him, to enable him to borrow $500 from one Black, and Black, in consideration of said note, indorsed over to the intestate the certificate in question for $600, indorsing thereon a direction to the bank to pay the intestate $500, and to place $100 thereof to the credit of the said Black.

Prior to the giving of the note there was an agreement between Black and the plaintiff's intestate made for the benefit of the defendant, by which the intestate was to obtain a release of certain of his property from the lien of a mortgage that was then upon it, and was then to execute a mortgage to Black, release the defendant and give up the note. The intestate died without having given any mortgage to Black. When the certificate was delivered to the defendant there was no agreement that a mortgage should be given by the intestate to secure the note previously signed by the defendant to enable the intestate to obtain the certificate of deposit, and the understanding was that the defendant was not to keep the certificate of deposit.

Upon the trial of the case judgment was directed in favor of the defendant.

*Held,* that under such circumstances there was no rule, legal or equitable, giving the defendant a lien upon the proceeds of the note or authorizing him to follow it into the custody of the intestate as a security for the performance of such promise.

APPEAL by the plaintiff, Michael McCormick, as administrator of the goods, chattels and credits of Thomas McManus, deceased, from a judgment of the Supreme Court in favor of the defendant, directed by the court at the Tompkins Circuit upon the special verdict of a jury as to two specific issues, entered in the office of the clerk of the county of Tompkins on the 24th day of January, 1893, and from an order made at said Circuit entered in the said clerk's office on the 24th day of January, 1893, denying plaintiff's motion for a new trial upon the first issue found by the jury, and to set aside the finding of the jury upon such first issue.

*F. M. Leary* and *M. N. Tompkins,* for the appellant.

*David M. Dean,* for the respondent.

PARKER, J.:

The defendant received from the plaintiff's intestate a certificate of deposit on the Tompkins County Bank for $500, with instructions to collect that amount; to pay to one Brice $107.50 thereof, and return the balance to him. The defendant collected from the bank the whole amount, and paid to Brice as directed. The intestate died on the very day the defendant received the money from the bank, and this plaintiff, as his administrator, after demanding the balance of such money from the defendant, and being refused, brings this action for its recovery.

Upon the trial, the following facts appeared:

*First.* It was conceded that a day or so before he received the cer-

tificate from the deceased, the defendant had indorsed a note as surety for him, to enable him to borrow $500 from Mr. Black, and that Black had, in consideration of such note, indorsed over to the intestate the certificate in question. Such certificate was for $600, and Black had indorsed on it a direction to the bank to pay the intestate $500, and place $100 thereof to the credit of Black.

Next it appeared, that prior to the giving of the note in question, there was an agreement between Black and McManus, the intestate, made for the benefit of the defendant in this action, by which McManus was to obtain a release of certain of his property from the lien of a mortgage that was then upon it, and then execute a mortgage to Black and release the defendant and give up the note. This last statement was determined by the jury to be the fact, in reply to a specific question left to them to be answered as a special verdict.

It was also conceded that the intestate died without having given any mortgage to Black. Another question was submitted to the jury, as follows : " At the time the certificate of deposit was delivered to Mr. Sullivan to bring to Ithaca to get the money on, was it then agreed between Mr. McManus and Mr. Sullivan that a mortgage should be given upon a portion of Mr. McManus' farm, to secure the note Mr. Sullivan had previously signed for Mr. McManus to obtain that certificate of deposit?" The jury answered "no," to this question, and we must, therefore, assume that no such agreement was made with the defendant when he took the certificate. To this must be added another fact testified to by the defendant himself — that when he took the certificate the understanding was that he was not going to keep it. Nothing was said when he took the certificate to get the money on, that he was going to keep it, or hold it until the mortgage was given, and he did not intend to so keep it or hold it.

Such were the facts and the only facts appearing to the court, and upon them a judgment was directed dismissing the plaintiff's complaint on the merits. From that judgment this appeal is taken.

The first question to be considered is whether, from these facts, any defense appears to have been shown against the plaintiff's claim. It is important to notice that the transaction in which the loan was made, and the defendant's liability as a surety incurred, was completed a day or two before he took the certificate of deposit to get

the money on. There is no claim made that the certificate, or the money to be received upon it, was to be held, or in any way applied, as a security to the defendant for indorsing the note. There was not, in any form, or between any of the parties, any arrangement that such certificate, or the proceeds of the loan, were to be held by anyone as security that the promised mortgage would be given. Nor is there anything to indicate that the parties understood that the contract by which the loan was made by Black, and the liability as surety incurred by the defendant, was not completely finished when the intestate delivered the note to Black with the defendant's indorsement thereon, and received from Black the certificate in exchange therefor.

The defendant himself testified that when he received the certificate from the intestate to go and get the money on it, he had no intention of keeping it until the mortgage was given, or as security for any purpose. He was at once to return the money he received upon it to the intestate. It is plain, therefore, that the only security which the defendant had for becoming surety on the note, or which was contemplated from the time the arrangement began until it was fully completed, was the mere naked promise of the intestate made to Black, that sometime in the future he would take up the note and substitute a mortgage in its place.

Under such circumstances, I am not aware of any rule, legal or equitable, nor am I referred to any by the defendant's counsel that gives the defendant a lien upon the proceeds of that note, or authorizes him to follow it into the custody of the intestate as a security for the performance of such promise. The evidence does not present a case where the transaction is incomplete, and something remains to be done by the principal before the surety's obligation is to be assumed. The obligations of the borrower, the lender and the surety, had all been fully incurred, and the transaction closed up before the certificate came into the possession of the defendant.

It may be conceded that the promise made by the intestate to Black was made for the defendant's benefit, and also, that in equity and justice it ought to be performed. Yet, I am at a loss to discover any principle that gives the defendant a specific lien or claim upon the proceeds of that note. It seems, therefore, that when the defendant undertook to take that certificate to the bank, get the

money on it, and return such money to the intestate, he was acting merely as an agent for the intestate, and had no other rights in the fund he was receiving than an ordinary agent would have had.

Authorities need not be cited to show that, under such circumstances, upon the death of the intestate, he was obliged to account for and pay over the proceeds to his administrator.

These considerations seem to dispose of the whole case, as defendant has not pleaded any counterclaim to the indebtedness so existing against him. But, aside from the question of pleading, the facts do not show any demand due him which he could utilize as a counterclaim in this action. Clearly no cause of action had accrued to him by reason of his having indorsed the note as surety for the intestate, because as yet the note had not become due, and he had never been compelled to pay anything on account of it. (*Frost* v. *Carter*, 1 Johns. Cas. 74.)

Nor did he have a cause of action against the intestate because of his omission to give the mortgage promised to Black. Such promise, in legal effect, was little more than the promise ordinarily implied in every case between principal and surety, to wit, that the principal will indemnify the surety against loss on account of the debt which he, as surety, assumes to pay. No cause of action could accrue to the defendant for a breach of the promise, until he had in some manner been damnified. Although the note had not been taken up, he had never been called upon to pay it. Nor does it appear that the intestate's estate is insolvent, so that he will ultimately have to pay it. A party cannot set off against a debt due from himself, at the time of the intestate's death, a claim against the intestate not then existing or owned by himself. (Code, § 306; *Jordan* v. *National Shoe & Leather Bank*, 74 N. Y. 467.)

Nor should a cause of action be defeated by a mere equity that is not in itself sufficient to found an action upon. (*Armstrong* v. *McKelvey*, 104 N. Y. 179; *Canaday* v. *Stiger*, 55 id. 452.)

These considerations require that the judgment should be reversed, and render unnecessary an examination of the other questions presented by the appellant.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment and order reversed and a new trial ordered, with costs to abide the event.