JAMES S. WILLIAMS v. WILLIAM H. LOBBAN,
Administrator *de bonis non* of Estate of SAMUEL
LOBBAN, deceased, Plaintiff in Error.

Division Two, July 13, 1907.

1. **CONVEYANCES: Acknowledgment: New Point.** A cause on appeal must be heard on the same theory it was tried below. If no objection was made at the trial that the acknowledgments of certain deeds were defective in that the officer who took them did not write out his official title but simply added to his name at the end of the certificate "N. P.," that objection is not available on appeal.

2. ———: ———: **Initials "N. P."** Where the official seal of the notary is attached to the deed, and that seal shows he was a notary public, the acknowledgment is not defective simply because he added only the letters "N. P." after his written name to the certificate.

3. **JUDGMENT: By Initials: Attachment: Jurisdiction.** A judgment and deed under an attachment proceeding describing the attachment defendant as "N. W. Lobban" instead of Napoleon W. Lobban, will not be held void, in the absence of proof that the order of publication and the notice in pursuance thereof were directed to him by the name and style of "N. W. Lobban," in view of the fact that his interest in the land was attached in the attachment proceeding brought in the circuit court of the county. The jurisdiction of the parties cannot be impeached merely because the record is silent on the question. The circuit court of the county had jurisdiction over the subject-matter, and it was the land that was attached, and no order or proof of publication showing that the proceeding was against N. W. Lobban being offered in evidence, it will not be held 'that the court did not have jurisdiction to sell the land of Napoleon W. Lobban.

4. **WILL: Land to Be Sold: Execution.** Where the owner of land by will gave it to his wife and directed that at her death it should be sold and the proceeds divided among his eight children, the interest of one of the children could, during the widow's life, be seized in an attachment suit and sold under execution.

5. ———: ———: ———: **Equitable Conversion.** The land, by the direction to sell at the widow's death and to divide the proceeds among the children, was not converted into personalty at the time of the testator's death. On the contrary, the will

vested the land in the devisees, subject to the widow's life estate, and whether the estate of each devisee be considered real estate or personalty, it could be sold either by the devisee voluntarily, or by judgment and execution against him.

6. ——: ——: ——: ——: Election: Proceeds: Sale. The purchaser at such execution sale of a devisee's interest would be, if the land was sold, entitled to the proceeds, and as he has acquired the interests of all the other devisees by voluntary conveyances, he is not bound to submit to a sale of the land and the attendant expenses and costs, but is entitled to the land.

Error to Randolph Circuit Court.—*Hon. A. H. Waller,* Judge.

AFFIRMED.

*Jno. N. Hamilton* for plaintiff in error.

(1) The direction to sell contained in the will being absolute, and the time for the sale, though in the future, being fixed (viz: the death or re-marriage of the widow), the land was converted into personalty on the day of the testator's death. Compton v. McMahan, 19 Mo. App. 498; Craig v. Leslie, 3 Wheat (U. S.) 577; Peter v. Beverly, 10 Pet. (U. S.) 532; Rinehart v. Harrison, 1 Bald. (U. S.) 184; Cropley v. Cooper, 19 Wall. 167; High v. Worley, 33 Ala. 196; Baker v. Copenbarger, 15 Ill. 103; Greenwood v. Greenwood, 178 Ill. 387; Brolaski v. Gally, 51 Pa. St. 509; Evans' Appeal, 63 Pa. St. 183; Yerkes v. Yerkes, 200 Pa. St. 419; Wayne v. Fouts, 108 Tenn. 145; Fazewell v. Smith, 1 Rand. (Va.) 313; Com. v. Martin, 5 Munf. (Va.) 121; Harcum v. Hudnall, 14 Gratt. (Va.) 369; Trelawny v. Booth, 2 Atkyns, 307. (2) Though it be conceded that the heirs may elect to consider the land as realty, and that, in such case, it will not be held to have been converted into personalty, yet there can be no reconversion unless such election is the concurrent, unanimous and unequivocal act of all the heirs. Holloway v. Radcliffe,

23 Beav. 171; Biggs v. Peacock, 22 Ch. Div. 284; Fletcher v. Ashburner, 1 Brown Ch. Cas. 500; Baker v. Copenbarger, 15 Ill. 103; Beal v. Stehly, 21 Pa. St. 382; High v. Worley, 33 Ala. 196; Harcum v. Hudnall, 14 Gratt. (Va.) 376; McDonald v. O'Hara, 144 N. Y. 566; Bennett v. Chapin, 77 Mich. 526; 3 Pom. Eq. Jur. (3 Ed.), sec. 1176. Some cases go so far as to hold that, in case of an out-and-out conversion, there can be no reconversion. Comm. v. Martin, 5 Munf. (Va.) 117; Fluke v. Fluke, 16 N. J. Eq. 478; Crittenden v. Fairchild, 41 N. Y. 289. It is at least true that no one or more of such heirs, less than the whole, can make such election. See cases cited above under this head, especially Biggs v. Peacock, 22 Ch. Div. 284; High v. Worley, 33 Ala. 196; Baker v. Copenbarger, 15 Ill. 103; Mellen v. Mellen, 139 N. Y. 120. (3) If each heir, acting separately, can elect, then those first electing have the power to render the will nugatory. Thus, in this case, the fact that one man secured the interests of a part of the children, enables him to get for a small price the remaining shares, and to thus entirely nullify the intention of the testator that the children should all be put upon equal footing. (4) The provision that four of the children should each receive in the distribution $200 more than each of the other four makes it essential that there should be a sale and distribution of cash. In that way only could this provision of the will be effectuated. Hence, there could be no election. (5) Even were it to be conceded that it is sufficient that all the legatees elect, and that it is not essential that their election be concurrent, and though it be conceded that each legatee may make his or her election at a time different from the others, still there has been no election in this case, for the reason that some of the legatees have never elected. 1. The burden is on those who claim there has been a reconversion to show acts upon

the part of the legatees which will necessarily constitute an election. Wayne v. Fouts, 108 Tenn. 157. 2. Election signifies choice. It is a personal act by the person exercising the choice. The act must be done with the intent to elect. Brawford v. Wolfe, 103 Mo. 398; Wilson v. Fisher, 172 Mo. 20; 15 Cyc., p. 249; 11 Am. and Eng. Ency. Law (2 Ed.), 99; Oil Co. v. Hawkins, 74 Fed. 398; 3 Words and Phrases, p. 2336. No one can make an election for another; it is a personal right. Castleman v. Castleman, 184 Mo. 444; Welch v. Anderson, 28 Mo. 299. 3. As Napoleon's share was sold out involuntarily, he cannot be said to have made an election. 4. William H. does not mortgage any land. He mortgages only his interest in the estate. And that was personalty. His mortgage does not describe any land. It does not contain the word "land," nor the words "real estate," nor the word "realty." (6) The judgment on publication against N. W. Lobban cannot affect the title of Napoleon W. Lobban. Vincent v. Means, 184 Mo. 344; Skelton v. Sackett, 91 Mo. 377: Spore v. Ozark Land Co., 186 Mo. 656; Gillingham v. Brown, 187 Mo. 181; Burkham v. Manewal, 195 Mo. 500.

*Shackleford & Denny* and *W. M. Williams* for defendant in error.

(1) The point made concerning the interest of Napoleon W. Lobban cannot be maintained. 1. The abstract of the record does not set out the order of publication that was made in the case. The proceeding was in a court of general jurisdiction, and the presumption is that it proceeded according to law and in a regular and proper manner. If defendant intended to attack the sufficiency of the publication, he should have introduced it in evidence and set it out in his abstract. McClanahan v. West, 100 Mo. 320. 2. The court acquired jurisdiction by the writ of attachment and its levy upon the property of the defendant in that

suit. Hardin v. Lee, 51 Mo. 241; Freeman v. Thompson, 53 Mo. 193. 3. Napoleon W. Lobban, defendant in said attachment suit, had an interest in the real estate that could be seized by attachment and sold under execution. The legal title was in the heirs, subject to the power of sale. Eneberg v. Carter, 98 Mo. 647. (2) The legal title to the land in controversy vested in the children of Samuel Lobban, deceased, subject only to the power of sale in the will. Eneberg v. Carter, 98 Mo. 647; Crittenden v. Fairchild, 41 N. Y. 289. (3) Where the testator directs land to be sold and the proceeds divided, the persons entitled to the money may elect to take the land divested of the power of sale. 2 Woerner, Administration (1 Ed.), p. 728; 2 Underhill on Wills, secs. 703, 719. (4) The mortgages and deeds, read in evidence, conveyed to W. C. Harvey, plaintiff's grantor, all of the right, title and interest of the remaindermen in and to the property of Samuel Lobban, deceased. He acquired whatever interest they had and became entitled to all the rights of his grantors and assignors. Reed v. Underhill, 12 Barb. 113; Horst v. Dague, 34 Ohio St. 371; Mandlebaum v. McDonald, 29 Mich. 86; 2 Underhill on Wills, sec. 723; Eneberg v. Carter, 98 Mo. 647. (5) The remaindermen had such an interest as was subject to sale under the laws of this State. Godman v. Simmons, 113 Mo. 122; Eneberg v. Carter, supra. And the transfer of all the right, title and interest of an heir in an estate passes all interest the heir may have in real estate belonging to the ancestor, and which he may mortgage. Watson v. Priest, 9 Mo. App. 263. (6) The land descended to the heirs, subject only to the power of sale contained in the will. They had the legal title, and in case of a sale under the power, the proceeds would belong to them. They could convey the legal title, or assign their interest in the proceeds, and their assignee or grantee

would be substituted to their rights. Reed v. Underhill, 12 Barb. 113; Horst v. Dague, 34 Oh. St. 371; In re Ledrich, 68 Hun 396. (7) Plaintiff's grantor, W. C. Harvey, having, prior to any attempt to execute the power of sale contained in the will, acquired the legal title of all of the remaindermen in and to the land in controversy, and having succeeded to all of their rights in and to said property, would, in the event of a sale, be entitled to the entire proceeds. He was, therefore, entitled to keep the land and was not bound to submit to a sale in order that he might re-purchase it with the proceeds to which he was entitled. He conveyed the property and real estate to the plaintiff. The party who is entitled to the entire proceeds of a sale under a power, may elect to take the property without a sale. 2 Underhill on Wills, sec. 719; Mellen v. Mellen, 34 N. E. 925; Hetzel v. Barber, 69 N. Y. 1; Prentice v. Janssen, 79 N. Y. 478; Garvey v. McDavitt, 72 N. Y. 556. (8) Injunction is the proper remedy to prevent a sale of land under a power, after the parties beneficially interested have elected to keep the land without a sale. Mellen v. Mellen, 34 N. E. 925; 2 Underhill on Wills, sec. 723.

GANTT, J.—Plaintiff in his petition sought and the circuit court of Randolph county awarded him a perpetual injunction to prevent the sale under a power contained in the will of Samuel Lobban, deceased, to a tract of land, to-wit, the northwest quarter of section 34, township 53, range 16, containing one hundred and sixty acres and lying in Randolph county, by the defendant William H. Lobban as administrator *de bonis non* with the will annexed.

Samuel Lobban died in 1867 seized in fee simple of the real estate above described and leaving a will whereby he devised all his property to his wife for her life or her widowhood, and at her re-marriage or death, he

directed said property to be sold and divided among his eight children, except that four of them were to have two hundred dollars more than the others to make them equal with previous advancements. The widow was appointed sole executrix and qualified as such in October, 1867. She made two settlements of the estate, but the records do not show that anything further was done in the estate. She never remarried and lived until 1897. The widow sold and conveyed her interest in the land to Dr. W. C. Harvey, who also acquired at different times the interests of all the other children in said property in the manner hereinafter specified, and subsequently sold all of said real estate to James S. Williams, the plaintiff in this suit. In the year 1903, it appears that letters *de donis non* upon the estate of Samuel Lobban, deceased, were granted to the defendant William H. Lobban, who had advertised this tract of land for sale under the power contained in Samuel Lobban's will, and thereupon the plaintiff brought this injunction to restrain the sale of said land by said William H. Lobban.

In addition to the deed of the widow to her life interest in the land to Dr. Harvey, it appears that the defendant William H. Lobban on the 27th of March, 1869, executed a mortgage wherein the estate mortgaged was described as, "The following described interest in the estate of Samuel Lobban, deceased, the one undivided eighth part situated in Randolph county, Missouri." This mortgage was given to secure a note of four hundred dollars bearing interest at the rate of ten per cent per annum in favor of James R. Jackson. A suit was brought to foreclose this mortgage on the 22nd of March, 1880, and the court in that case determined that the mortgage was a lien upon the interest of William H. Lobban in the real estate in controversy herein and entered a judgment directing the sale of all of his right, title and interest therein for the payment

of the said mortgage debt. There was a sale under this judgment or decree and at said sale James R. Jackson became the purchaser and he subsequently conveyed the interest acquired by him to Dr. W. C. Harvey. Another of the children, Mary C. Wisdom, on the 2d of January, 1877, sold and conveyed to John W. Lobban all her right, title and interest as heir or devisee either at law or under the will of Samuel W. Lobban, deceased, of, in and to all property real and personal belonging to said Samuel W. Lobban, deceased—the real estate being the same as above hereinbefore set out, with an addition of lot 8 in block 4 on the west side of Bradford street in Roanoke, Missouri. John W. Lobban then executed a deed of trust upon his right, title and interest in the said real estate and that acquired by him from Mrs. Wisdom on the 7th of April, 1877. A default having been made in the payment of the note for which said deed of trust was given, the trustee in the deed sold the interest of the said John W. Lobban and Jacob Fischer became the purchaser. Afterwards Fischer and wife sold and conveyed the interest thus acquired in the land in suit to Dr. William C. Harvey on the 24th of March, 1888. Mrs. Phipps, Mrs. Warren, Mrs. Perrin and Mrs. Rice all conveyed their interest in the said real estate by deeds to Dr. W. C. Harvey in the years 1888, 1889 and 1893. The interest of the remaining child, Napoleon W. Lobban, was acquired in the following manner: John R. Christian brought a suit against him by attachment in the circuit court of Randolph county at the September term, 1879. A writ of attachment was issued and levied upon his interest in the land. The judgment itself was offered in evidence. The order of publication and the publication itself were not introduced in evidence although the judgment recites there was a publication and proof thereof made to the satisfaction of the court in the attachment suit. A judgment was rendered in

this attachment proceeding and a sale made thereunder at which John R. Christian became the purchaser and obtained a sheriff's deed for all the right, title and interest and estate of the said N. W. Lobban in the above-described real estate. · Afterwards on September 7th, 1887, John R. Christian conveyed said interest so obtained to Dr. W. C. Harvey. It was admitted in evidence that Mrs. Warren was the only child of James, the deceased son of the testator. After having thus acquired the various interests of the devisees in said land, on the 7th of March, 1901, Dr. William C. Harvey conveyed the same by deed to the plaintiff James F. Williams for $4,800.

I.  Before proceeding to the discussion of the controlling proposition in this case, the objection to the acknowledgments of the deeds of the three remaindermen, Mrs. Phipps, Mrs. Perrin and Mrs. Rice, urged in the brief of counsel for the defendant, must be considered. The objection is made in this court for the first time that the acknowledgment of these deeds was defective in that the officer who took the same did not write out his official title and simply added to his name to the certificate the initials "N. P." It is sufficient to say no such objection was interposed in the trial court and the case must be tried here upon the same theory as in the circuit court. But even if timely objection had been made, we think there is no merit in the point. The official seal of the notary was attached to the deed and it is said in Devlin on Deeds (2 Ed.), section 501: "An abbreviation of the official name of the officer taking the acknowledgment is sufficient. . . . The letters 'N. P.' are sufficient to show that the officer beside whose name they are written, is a notary public." And we may add, especially where the officer, as in this case, certified that he affixed his official seal at his office, etc. And that seal shows he was a notary public. [Rowley v. Berrian, 12

Ill. 198; Summer v. Mitchell, 29 Fla. 179, 30 Am. St. 106.]

II.   It is next insisted that the plaintiff acquired no title to the interest of Napoleon W. Lobban, because the judgment offered in evidence and the deed under the attachment proceedings described him as N. W. Lobban.   Counsel refers us on this point to Skelton v. Sackett, 91 Mo. 377; Spore v. Land Company, 186 Mo. 656; Gillingham v. Brown, 187 Mo. 181; Burkham v. Manewal, 195 Mo. 500; and Vincent v. Means, 184 Mo. 327, all of which were actions under the tax law to enforce the State's lien in which the statute required the suit to be brought against the owner of the property, except the case of Vincent v. Means, which was an action to quiet title.   And in all of which it appeared that the defendant was only designated by his initials and not by his full name.   Those cases are the settled law in this State in that character of cases, but the plaintiff in this case asserts title to the share of Napoleon W. Lobban under and by virtue of an attachment proceeding in the circuit court of Randolph county, a court of general jurisdiction.   The defendant in this case did not introduce the order of publication or the proof of the publication showing that the proceedings in that case were against N. W. Lobban and not Napoleon W. Lobban.   In McClanahan v. West, 100 Mo. l. c. 320, it was said:   "A domestic judgment, rendered by a court of general jurisdiction, cannot be impeached by the parties to it merely because the record is silent as to the acquisition of jurisdiction.   Such judgment is equally as conclusive on the parties thereto, whether it recites, or whether it fails to recite, that jurisdiction has been acquired.   Nothing shall be intended to be out of the jurisdiction of a superior court, but that which specially appears to be so."   Again, in Freeman v. Thompson, 53 Mo. l. c. 194, it was said by this court: "In attachment causes the jurisdiction over any giv-

en matter is obtained by the levy thereon of a writ properly issued. And no matter what, or how great errors or irregularities may subsequently occur, the *res* remains still in the grasp of the court, and its judgment in regard thereto will be valid and binding, until reversed on error or by appeal, or set aside in a direct and appropriate proceeding for that purpose.'' In the absence, therefore, of any proof that the order of publication and the notice in pursuance thereof was directed to Napoleon W. Lobban by the name and style of N. W. Lobban and in view of the fact that his interest in the land in suit was attached in attachment proceeding in the circuit court of said county, the judgment and the deed thereunder cannot be held to be void.

III. It is next insisted that under the will of Samuel Lobban, deceased, Napoleon W. Lobban, the defendant, in said attachment suit, had no interest in the real estate of which his father died seized that could be seized by attachment and sold under execution, and in support of this contention the doctrine is invoked that where a will contains an absolute direction to sell the land and distribute the proceeds, and fixes the time when the sale is to be made, leaving neither the sale itself nor the time when it is to be made discretionary with the executor, the land is converted into personalty from the date of the testator's death, and that equity will consider things directed to be done as actually performed. In Eneberg v. Carter, 98 Mo. 647, the testator after making certain devises and declarations directed ''the remainder of my estate to be equally divided between my children'' (naming them), and in the next clause appointed Jesse P. Alexander the executor of his estate and directed ''that my executor will dispose of all my real estate as soon as it can be done without loss to my estate.''

After his death a judgment was obtained against

one of the sons, execution issued and all of the son's right, title and interest in the property was sold and the plaintiff became the purchaser. The son afterwards conveyed or attempted to convey his undivided one-fifth interest in the land to Alexander. The plaintiff charged that this conveyance was fraudulently made to evade the collection of the judgment and prayed that said deed to Alexander might be set aside. Upon this state of facts this court said: "As seen from the premises, the heart of this cause is involved in the question: Had Carter, the devisee, such an interest in the land that the lien of the judgment could operate thereon? Under our statutory provisions, all interests of a debtor in land, whether legal or equitable, are bound by the lien of a judgment rendered in the same county, and consequently are subject to sale under an execution issuing upon such judgment. [R. S. 1879, secs. 2730, 2731, 2767 and 2354; Slattery v. Jones, 96 Mo. 216.] So that it may be safely affirmed it is a general rule, a rule almost without exception, that the interests of a defendant debtor in land are never beyond the reach of an execution." In that case, the claim was made by counsel, as it is here, that the clause of the will operated as an equitable conversion of the land covered by it, and that such conversion of the land was of even date with that of the death of the testator. It was conceded by this court that if this claim was sound then the judgment created no lien on John Carter's interest in his father's estate and the plaintiff took nothing by his sheriff's deed. But, said the court: "Did the clause of the will in controversy operate by its own force and without action on the part of the executor, to convert the land into money, and thus place it beyond the lien of the judgment and the execution issued to enforce it? I am not of the opinion it did, and for these reasons: 'It is a well-known maxim that an heir at law can only be disinherited by express

devise or necessary implication, and that implication is defined to be such a strong probability that an intention to the contrary cannot be supposed.'. [2 Powell on Devises, 199.] And his title cannot be defeated unless there was a disposition of the subject to some other person capable of taking. [1 Fonb. Eq. 51; Habergham v. Vincent, 2 Ves. 224; Pickering v. Lord Stamford, 3 Ves. 493.] In the present case, there was certainly no express devise in fee to the executor, nor are there any such words in the will as to raise a fee in him by force of a strong implication. Therefore, the fee remained in the heirs at law, both by the devise to them, as well as by the statute of descents, until it should be divested by a sale by the executor under the terms of the will; and until such sale no conversion could occur. [Citing numerous cases.] I have been able to find no case where the doctrine of equitable conversion has been so applied as to cut out and dominate the title of the heir except where the donee of the power took a fee by necessary and inevitable implication, or where such fee was in express terms conferred upon such donee; otherwise, the title remains vested in the heirs until the donee of the power actually exercises it.'' Accordingly, it was held that John Carter had such an interest in the real estate that the judgment lien bound the same and that the execution thereunder conveyed his interest. In that case it will be observed the power to sell was given to the executor in express terms, but the court held there was no estate vested in him but simply a power of sale coupled with a trust which a court of equity would recognize and enforce. In the case at bar, it is to be regretted that counsel have not preserved in the bill of exceptions the exact language of the will. But it is stated in the bill, ''That said will provided that after the payment of his just debts, all his property was devised and bequeathed to his wife during her life or as long as she should remain his

widow, and when she should marry or die, the property was to be sold and divided among the children equally except that four of them were each to have in the division two hundred dollars more than the other four. The widow was appointed sole executrix, but the will did not appoint any person to make the sale." Obviously as the sale was only to be made after the death of the widow she could not make it and no person was appointed to make the sale. But counsel rely upon section 137, Revised Statutes 1899, which provides, "The sale and conveyance of real estate under a will shall be made by the acting executor or administrator with the will annexed, if no other person be appointed by the will for that purpose, or if such person fail or refuse to perform the trust." But it seems to us that if the executor in Eneberg v. Carter, supra, did not take a fee so as to divest the fee of the heirs at law, much less can it be said in this case that a fee was granted to any person so as to divest the fee of the heirs. Clearly no such fee was granted to the widow because the whole context shows that the sale was not to be made until after her death and no other person is named as her successor to make the sale and divide the proceeds. Counsel for the defendant urges that this court reached a wrong conclusion in Eneberg v. Carter, but that case has never been criticised or challenged, and we see no reason for refusing to accept it as controlling on this point, consequently it must be held that Napoleon W. Lobban had an interest in the real estate in suit, which was subject to attachment and sale under the attachment proceedings of Christian against him, and that his interests therein passed by the deed under those proceedings. [Crittenden v. Fairchild, 41 N. Y. 289.] But conceding the doctrine of equitable conversion of land into real estate, it is equally well settled that the ultimate and absolute owner or owners, if *sui juris*, may elect to take the property in

its existing state before it has been actually sold, if it is land, or invested in land if personalty, and put an end to the constructive conversion, and as equity will do nothing in vain the court will not compel the trustee to sell, for the beneficiary, who is absolutely entitled, may immediately reconvert the property. And a court of equity will not compel a trustee to execute a trust against the wishes of the *cestui que trust,* but will permit him to take the land if he elect to do so before the conversion has actually been made. [2 Underhill on Wills, sec. 719, note 3, and cases cited.] And this presents the controlling question in this case. Counsel for the defendant has with great care and discrimination collected a number of authorities to establish the rule that an equitable conversion of this land took place at the death of the testator Samuel Lobban and deduces therefrom that the devisees, his children, had no such interest therein that they could convey as land. But, as was said in 2 Underhill on Wills, section 703, "It must be noted that the rule that the land is converted as of the date of the death of the testator is based upon the presumption of an intention where the will is silent as to the time of sale. It yields to a clear expression of a contrary intention fixing the time of sale in the future. If the testator expressly directs the sale to take place at a particular future time, as so many years after his death or after a life estate, or if he has made it to depend upon the request or consent of others, no conversion takes place until the date arrives which is indicated by the will when it *ought* to be sold." And this was the rule announced by the Court of Appeals of New York in Savage v. Burnham, 17 N. Y. l. c. 569, and Moncrief v. Ross, 50 N. Y. l. c. 435 and 436. In Meehan v. Brennan, 45 N. Y. Supp. 57, it was ruled: "A conversion of realty into personalty is effected as of the time when the sale should have been made under the implied power contained in the will, disposing of the

proceeds of real estate, but not designating the person by whom the sale should be made." In this case it is plain that Samuel Lobban directed his real estate to be sold after the death of his widow, but named no person by whom the sale should be made. In Richey v. Johnson, 30 Ohio St. l. c. 293, in which the contention was that the conversion should take place as of the date of the death of the testator, it was said: "But we see no reason for giving a construction to the will—that is, in ascertaining the intent of the testator—why we should regard the conversion of the farm into money as taking place at the death of the testator, or at any time prior to the death of the widow. It is quite certain that the testator intended or contemplated no such conversion during her life. She was to have the use of the farm, as such, during her natural life." See, also, Brothers v. Cartwright, 2 Jones' Eq. (N. C.) 113. In our opinion then it was the intention of Samuel Lobban that the sale of this real estate should be made after the death of his widow and that the conversion of the same into personalty should not be construed as taking effect prior to that time. Before that time, however, had arrived, as we have seen by the accompanying statement, all of the devisees of Samuel Lobban except Napoleon Lobban had voluntarily elected to take their interest in the land as land, and had conveyed the same, and by mesne conveyances the plaintiff herein had become the owner of their interest therein, and Napoleon Lobban's interest had also passed to the plaintiff by virtue of the deed under the attachment proceedings instituted by Christian. With much industry counsel for the defendant has collected the cases showing that one of the several beneficiaries under a will which directs the land to be sold and the proceeds to be divided cannot by electing to take his part in realty defeat the purpose of the will and prevent the sale for distribution. But he concedes that by the unanimous and con-

current act of all the devisees the estate may be reconverted into realty, and the contention of the plaintiff in this case is that that is just what occurred in this case, and that the question as to whether one of several beneficiaries can defeat the purpose of the testator is not presented by this record. As we have already seen in Eneberg v. Carter, it was held that the title to the land vested in the devisees subject to the life estate of the widow, and the power of sale for distribution contained in the will. That is to say, each devisee had a vested interest, and, whether the property be considered real estate or personalty, could sell and dispose of that interest and the same could be sold by proper process against such child or devisee. See also Godman v. Simmons, 113 Mo. 122. But while conceding that all of the distributees could elect to have the property reconverted into realty, counsel for the defendant insist that this can only be done by the concurrent and simultaneous act of all of the devisees and that they could not by separate deeds and at different times bring about such reconversion even though all their interests had passed into one common grantee. Counsel cite a number of cases, especially English cases, to the effect that, "the trust for conversion, on the death of the widow, was for the benefit of all the next of kin, and unless they all concurred in electing to take the property as land, the trust took effect, and that it would be repugnant to the principles on which the doctrine of conversion and reconversion rests, to hold that one of the legatees of an undivided share in the products of real estate directed by the testator to be converted into personalty, could, without the assent of the others, elect to take his share as unconverted and in the shape of real estate." [Holloway v. Radcliffe, 23 Beavan 163; Biggs v. Peacock, L. R. 22 Chan. Div. 284; Fletcher v. Ashburner, 1 Brown's Chan. Cases 497.] But as already said this is not that character of

a case. In this case all of the interests of all of the devisees have passed into the hands of the one common grantee prior to the date fixed for the sale and conversion of the land into realty. On the contrary, it was ruled in Reed v. Underhill, 12 Barb. 113, that "Where lands are not devised to executors to sell, but there is a mere naked power for that purpose, no estate vests in the executors, but descends to the heirs at law subject to the power of sale, and a deed from such *cestui que trust*, for a valuable consideration, must be deemed an election, so far as he can elect, to take the estate unchanged, and will have the effect to transmit such interest and estate as he had in the premises, to the grantee." It was not held in that case, as defendant's counsel seem to insist, that one of the heirs by such a conveyance could prevent the execution of the power of sale by the executors, but it was simply held that he might convey his interest in the real estate as land and in case of a sale under the power the grantee would be entitled to that portion of the purchase money to which his grantor would have been entitled under the will. The doctrine of that case was expressly reaffirmed by the Court of Appeals of New York in Sayles v. Best (1893), 35 N. E. 636, and in this connection it may be well to remark that the laws of New York in regard to the vendibility of interests in real estate are very similar to ours. See also Hetzel v. Barber, 69 N. Y. 14. In Greenland v. Wadell, 116 N. Y. 246, among other things the court said: "By that conveyance Mrs. Busch acquired the entire beneficial interest in the property. Her deed to the plaintiff had the effect to vest in him the title of the land. Since all the parties having any beneficial interest in it or its proceeds have thus joined in and made the conveyance, there remains no occasion for the exercise of the power of sale given by the will; and upon the principle that the beneficiaries in the equitable conversion of real property into

personalty, may effectually elect to have a reconversion in the realty and take it as land, rather than the proceeds of it, we think the exercise of such power of sale may be deemed dispensed with and defeated. [Story's Eq. Juris., sec. 793; Hetzel v. Barber, 69 N. Y. 1; Prentice v. Janssen, 79 N. Y. 478; Armstrong v. McKelvey, 104 N. Y. 179.]'' In Bank of Ukiah v. Rice, 76 Pac. 1020, where there had been a devise of real estate for the wife for life, and the direction that after her death it be sold and the proceeds divided between certain beneficiaries therein named, it was held that the mortgage by one of the beneficiaries of his undivided interest in the land, followed by the subsequent execution of the sheriff's deed foreclosing the mortgage, was an act of such unequivocal character as to indicate his election for a reconversion and had the effect to vest in the plaintiff his interest in the land as well as in the proceeds from the sale in case the power should be subsequently executed. Citing Reed v. Underhill, 12 Barb. 113; Sayles v. Best, 140 N. Y. 376; Gest v. Flock, 2 N. J. Eq. 108. In the last-named case a conveyance of the land by the beneficiary is evidence of such an election. Counsel for the defendant construes the cases which require all of the beneficiaries to elect in order to reconvert the estate into realty to mean that it must be done at one and the same time, or practically by the same instrument, and cites Harcum's Admr. v. Hudnall, 14 Gratt. 369; High v. Worley, 33 Ala. 196; Beal v. Stehley, 21 Pa. St. 376; McDonald v. O'Hara, 144 N. Y. 566, as supporting his contention. As we construe these cases they unquestionably do hold that less than the whole number of beneficiaries cannot produce a reconversion of the estate into realty, but the cases we have cited hold that each beneficiary for himself may make his election by selling and conveying his individual interest and that if they all make conveyances a re-

206 Sup—27

conversion will be held to have been taken place we think is inevitable from the doctrine announced in Reed v. Underhill and the cases that we have cited approving that case and our own decision of Eneberg v. Carter, 98 Mo. 647. Indeed, in McDonald v. O'Hara, 144 N. Y. 566, it was expressly said: "It is, however, well settled that the persons who are exclusively entitled to the fund arising from the sale may, if they so elect prior to the actual sale, take the real estate in its unconverted form." It must logically follow that, if each and every one of the beneficiaries conveys his interest to a common grantee, such common grantee becomes the person entitled to the fund which would arise from the sale and subsequently may elect to take the real estate as land and not personalty and thus dispense with the sale. The case of Mandlebaum v. McDonell, 29 Mich. 78, on this point, is exactly like this case; there the testator devised to his wife an estate for her life or widowhood and then provided for a sale of the land and distribution of the proceeds among the children; the children by separate deeds conveyed their respective interests in the property and by mesne conveyances all the right, title and interest conveyed by the deeds of the children were transferred to the complainant. And although there was a limitation in the will upon the power of the children to convey, the court in a most learned and exhaustive opinion held that the complainant had acquired all the interest in the property and as such was entitled to take the land free from the power of sale contained in the testator's will. Our conclusion is then that as it clearly appears that the plaintiff has acquired by proper conveyances and proceedings the interest of all the beneficiaries under the will of Samuel Lobban, he would, in the event of a sale under the power contained in the will, be entitled to the entire proceeds, and is entitled to the land and is not bound to submit to a sale of the property and the at-

tending expenses and cost thereof, and the court below
was right in granting him a perpetual injunction to
prevent the sale.

The judgment of the circuit court is therefore affirmed. *Fox, P. J.,* and *Burgess, J.,* concur.