THE HABERLE-CRYSTAL SPRING BREWING COMPANY, Plaintiff, *v.* CATHERINE HANDRAHAN, Defendant.

(Supreme Court, Onondaga Special Term, May, 1917.)

Pleading — negotiable instruments — damages — actions — what is not proper subject of a counterclaim — Code of Civil Procedure, §§ 501, 1837.

In an action authorized to be brought under section 1837 of the Code of Civil Procedure against the next of kin or legatees of a testator to recover on a promissory note made by him, upon a claim against him for rent and also upon a claim for money advanced, the right of the defendant, to whom upon the judicial settlement of the account of the executor was turned over certain real estate described in the complaint and also

certain personal property, to recover damages sustained by defendant's testator by reason of certain fraudulent acts and representations of the plaintiff, which in no way included or related to the contractual obligations of defendant's testator set forth in the complaint and which occurred long after the transaction therein alleged, is not the proper subject of a counterclaim under section 501 of the Code of Civil Procedure, and a demurrer thereto will be sustained, with leave to withdraw the answer and amend the same.

DECISION on a demurrer to a counterclaim.

Welch & Parsons (Walter Welch, of counsel), for plaintiff.

J. David Enright, for defendant.

Ross, J.   This action is brought under the provisions of section 1837 of the Code of Civil Procedure (which permits an action against the next of kin or legatees of a testator to recover a debt due from the latter), and is based upon the following facts: A short time prior to November, 1914, one John F. Mahar, a resident of Onondaga county, died, leaving a last will and testament which was duly admitted to probate, in which one F. J. G. was named as executor, and the defendant, Catherine Handrahan, a sister of the said deceased, was the sole legatee named in said will. The said executor duly advertised for creditors and has heretofore had a final accounting as such executor, and upon said accounting turned over to the defendant, Catherine Handrahan, pursuant to the terms of said will, certain real estate described in the complaint and personal property in excess of the value of $8,000, but said executor has not been discharged.

The action is based, *first,* upon a promissory note made on September 25, 1913, by John F. Mahar, deceased, which was payable in four months from its

date, on which the plaintiff claims is due substantially five hundred dollars, and upon a claim against the said John F. Mahar for rent for a portion of the month of April, 1912, amounting to seventeen dollars and fifty cents, together with interest, and also upon a claim for moneys advanced in May, 1912, twenty-three dollars, together with interest.

The plaintiff further alleges in its complaint that the aforesaid executor accounted and turned over the whole of the estate of said John F. Mahar, both real and personal, to the defendant.

The defendant, with other defenses, pleads a counterclaim, and it is to the sufficiency of said counterclaim that this decision is addressed. The counterclaim in question alleges that on or about the 23d of February, 1914, the said John F. Mahar sold through the medium of Walter Welch, the attorney and agent for the defendant, certain real property belonging to the said John F. Mahar for the sum of $9,000, payable according to the terms of a contract referred to in the aforesaid counterclaim, and said counterclaim contains the following allegation in relation thereto: "Defendant further alleges upon information and belief that on the 5th day of March, 1914, the plaintiff herein did obtain the signature of the said John F. Mahar to the alleged deed of said premises conveying the premises to plaintiff and did deliver to the said John F. Mahar a sum of money purporting to be the balance due upon the purchase price of said premises, and did fraudulently deduct from the said balance of the said purchase price and did fraudulently retain from the said balance of the said purchase price of the said premises the sum of $500, and that it did so fraudulently deduct and retain said sum out of said balance without the consent or by acquiescence of the said John F. Mahar," and con-

tains further allegations essential to a proper amplification of said counterclaim.

The plaintiff demurred to the counterclaim set up in the defendant's answer upon several grounds, but more particularly (2) that the defendant has not legal capacity to recover upon the cause of action set up in the counterclaim, but that such right of action, if it exists at all, exists in favor of the executor of the last will and testament of John F. Mahar, deceased, and (3) that the counterclaim is not of the character permitted by section 501 of the Code of Civil Procedure.

*Capacity to sue.* In disposing of the plaintiff's second ground of demurrer, while not free from difficulty, as will appear by a comparison of the prevailing opinion of Follett, Ch. J., and the dissenting opinion of Bradley, J., in the case of *Blood* v. *Kane,* hereafter cited, in my opinion, if the counterclaim pleaded was one that John F. Mahar, deceased, could have pleaded in answer to the cause of action stated in the complaint herein, it would be available to the defendant. It seems to me that this contention is sustained by the case of *Blood* v. *Kane,* 130 N. Y. 514. The case at bar is a stronger case in favor of the right of a sole legatee and devisee to plead a counterclaim than the case of *Blood* v. *Kane,* because in the *Blood* case there had been, unlike the case at bar, no order directing the publication of notice to creditors, and also there was in the former case a question as to the time when the qualified title of the defendant as executrix merged into an absolute title as sole beneficiary which is not involved in the case at bar.

The case of *Armstrong* v. *McKelvey,* 39 Hun, 213; affd., 104 N. Y. 179, cited by the plaintiff's counsel, seems to me to be distinguishable upon the facts. In the *Armstrong* case, the principal point involved was the sufficiency of the proof relied upon to establish

a reconversion of the personal estate into land. See opinion of Finch, J., 104 N. Y. 183, at top of page. In the decision referred to, the referee, to whom the matter of counterclaim had been resubmitted, found against its validity on the facts, and I am somewhat at a loss to understand why the courts spent so much time upon that branch of the case.

*Not proper subject of counterclaim.* The counterclaim defined in section 501 of the Code of Civil Procedure is a claim which tends in some way to diminish or defeat the plaintiff's recovery, and must be " 1. A cause of action arising out of the contract or transaction, set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action. 2. In an action on contract, any other cause of action on contract, existing at the commencement of the action."

A test is given in some of the authorities to determine whether a counterclaim is properly pleaded, that the rights of the parties in regard to presenting their respective contentions in the same action are reciprocal; that where a counterclaim is properly pleaded the cause of action to which it is pleaded might be pleaded as a counterclaim if the defendant had brought the action. *Adams* v. *Schwartz,* 137 App. Div. 230, 235; *Stevenson* v. *Devins,* 158 id. 616, 619; *Fulton Co. G. & E. Co.* v. *Hudson River T. Co.,* 200 N. Y. 287, 291.

Applying this test, the defendant (as plaintiff) alleges against the plaintiff herein (as defendant) that in February, 1914, the defendant (plaintiff herein) by false and fraudulent representations induced plaintiff's (defendant herein) testator to accept $500 upon settlement for the sale of testator's real property less than the amount actually due plaintiff's (defendant herein) testator; and in answer to

this the defendant (plaintiff herein) alleges as a counterclaim the promissory note executed by the testator in 1913, and the money advanced and balance on rent due in April, 1912. It could hardly be claimed that such alleged counterclaim was a cause of action growing out of the transaction set forth in the supposed complaint as the foundation of plaintiff's (defendant herein) claim, or that it was connected with the subject of the action. In whatever language we may define the " subject " of an action or whatever subtlety of reasoning may be applied to connect such subject with the action alleged in a complaint, upon a general allegation of an independent tort committed in 1914, unconnected with any previous transaction, it would·be almost preposterous to claim that an innocent business transaction consummated in 1912 and 1913, which gave rise to a simple contractual obligation, was connected with the wrong committed in 1914, which is the basis of the supposed action.

Suppose that, in the case at bar, the defendant had pleaded a counterclaim that it was a part of the agreement at the time of sale of defendant's testator's real property, and as a part of the accounting that the plaintiff was to surrender the note and cancel the obligation in suit; in that event it would seem that such a counterclaim would be connected with the subject of the action.

Or, if the counterclaim was an allegation that, by mistake, the amount of the note in suit and the amount due for moneys advanced and rent were omitted from said account; but, in the present form of the pleadings, it is a simple attempt to counterclaim damages arising from a tort committed two years after the contractual obligations alleged in the complaint had occurred.

The case of *Xenia Branch* v. *Lee,* 7 Abb. Pr. 372,

Superior Court of New York city, which is, in the language of one text writer, " a very able and instructive decision," and has been referred to in many cases in the Appellate Division with approval, states on page 389 with reference to the subject of counterclaim as follows:

"Again: the second subdivision having provided for all counterclaims arising on contract — in all actions arising on contract — no cases can be supposed to which the first subdivision can be applied, unless it be one of three classes, viz: .

" 1st. In actions in which a contract is stated as the foundation of the plaintiff's claim — counterclaims which arise out of the same contract; or,

" 2d. In actions in which some transaction, not being a contract, is set forth as the foundation of the plaintiff's claim — counterclaims which arise out of the same transaction; or,

" 3d. In actions in which either a contract, or a transaction which is not a contract, is set forth as the foundation of the plaintiff's claim — counterclaims which neither arise out of the same contract, nor out of the same transaction, but which are connected with the subject of the action."

The defendant's counterclaim concededly can only be sustained under the third subdivision cited. The theory of the learned counsel for the defendant is that the "subject of the action " is the " business dealings " between the plaintiff and Mahar. This view would break down every restriction imposed by section 501 of the Code of Civil Procedure, and would open up in every action growing out of a contract or business transaction, whether founded in contract or tort, every other contract or business transaction of whatever name or nature, however unrelated in time or character or subject matter. I accept as correct

Pomeroy's definition as the nearest yet attempted: "It would, as it seems to me, be correct to say in all cases, legal or equitable, that the 'subject of the action' is the plaintiff's main *primary right* which has been broken and by means of whose breach a remedial right arises. * * * It seems, therefore, more in accordance with the nature of actions and more in harmony with the language of the statute, to regard the 'subject of the action' as denoting the plaintiff's *principal primary right* to enforce or maintain which the action is brought, than to regard it as denoting the specific thing in regard to which the legal controversy is carried on." Pom. Rem. (1st ed.) § 775; Pom. Code Rem. (4th ed.) *775.

Applying the foregoing definition to the facts in the instant case, the plaintiff's *primary right* is the right to enforce the payment of the money due upon the agreements of Mahar; and the *primary right* of the defendant as set up in the counterclaim now under review is the right to recover damages sustained by defendant's testator by reason of the fraudulent acts and representations of the plaintiff, which fraudulent acts and representations in no way included or related to the contractual obligations of the defendant's testator set forth in the complaint, and occurred long subsequent to the transactions set forth in the complaint.

So much for the subject of the action. There is even more difficulty in complying with the requirements of the Code of Civil Procedure that the counterclaim should be "connected with" the subject of the action. As stated by Pomeroy: " The connection must be immediate and direct. A remote, uncertain, partial connection is not enough to satisfy the requirements of the statute. * * * It is that the connection must be such that the parties could be supposed to

have foreseen and contemplated it in their mutual acts; in other words, that the parties must be assumed to have had this connection and its consequences in view when they dealt with each other.'' Pom. Rem. (1st ed.) § 776; Pom. Code Rem. (4th ed.) *776.

The case of *Ter Kuile* v. *Marsland,* 81 Hun, 420, is instructive in this connection. Follett, J., on page 423, states: '' The plaintiff, as the foundation for his cause of action, alleges what he asserts is the legal contract of April 1, 1892, which he must introduce in evidence before he will be permitted to give evidence tending to show that the defendant wrongfully broke it. All of the counterclaims arise out of the alleged non-performance by the plaintiff of that contract, and, besides, they are connected with the subject of the action.''

In the language of Pomeroy, heretofore cited, '' the parties must be assumed to have had this connection and its consequences in view when they dealt with each other.'' See on general subject: *Edgerton* v. *Page,* 20 N. Y. 281, 285; *Boreel* v. *Lawton,* 90 id. 293; *Fulton Co. G. & E. Co.* v. *Hudson Riv. T. Co.,* 200 id. 287, 298; *Root Co.* v. *N. Y. C. & H. R. R. R. Co.,* 166 App. Div. 137; *Marshall* v. *Friend,* 35 Misc. Rep. 101.

An appropriate interlocutory judgment may be entered hereon, sustaining the demurrer herein and awarding the plaintiff costs thereon, and giving the defendant an opportunity to withdraw her answer and amend the same.

Ordered accordingly.