Maxwell Shapiro, J.
This is a holdover proceeding brought by Soft-Lite Lens Company, Inc. (hereinafter referred to as “landlord”) against E. R. Squibb & Sons, Division of Olin Mathieson Chemical Corporation (hereinafter referred to as “ tenant ”) to recover possession of rooms 2103-2111 in premises 745 Fifth Avenue, Borough of Manhattan, City of New York (hereinafter referred to as “ subject premises ”).
The facts, so far as they are relative and material to determine all the issues herein presented are as follows:
The landlord is a domestic corporation having its principal place of business at 745 Fifth Avenue in the Borough of Manhattan, City of New York (hereinafter referred to as “ The Squibb Building”). It has occupied office space in the Squibb Building for about 20 years under 5 or 6 leases. It has occupied the subject premises since prior to March 28, 1945 the effective date of the State Business Rent Law (L. 1945, ch. 314, as amd.).
Landlord’s most recent lease was executed on July 29, 1953 with Jones Estate Corporation (hereinafter referred to as “Jones”), then the owner of the Squibb Building. The premises covered by that lease were room 2003 on the 20th floor, and room numbers 2103-2111 on the 21st floor. The lease was for a term of five years commencing May 1, 1954 and ending on April 30, 1959. At the time of the execution of the lease on July 29, 1953 there was in existence another lease between the landlord and Jones which was to expire on April 30, 1954. Jones was a subsidiary of the tenant and the tenant in or about 1952 became a division of Olin Mathieson Chemical Corporation (hereinafter referred to as “ Olin”).
*779 Prior to the execution of the lease dated July 29, 1953 the. landlord had been negotiating with Bausch & Lomb for the sale by it to the latter of the major portion of its business. If the proposed sale were consummated, it was uncertain that Bausch & Lomb would utilize the landlord’s space in the Squibb Building or its own existing facilities at 735 Fifth Avenue. When the sale to Bausch & Lomb was consummated, it was decided not to use the landlord’s space in the Squibb Building. Thereupon the landlord’s president informed the agent or the owner that it required only a portion of the space it had leased on July 29, 1953 and asked him if he might find a subtenant for the balance of the space. The agent advised the landlord’s president that the tenant herein might require the said space.
As a result of the foregoing discussion and on September 30, 1953 the landlord and tenant herein executed a sublease of all of the space included in the former’s lease dated July 29, 1953, for a term of 5 years, 4 months and 29 days, commencing December 1, 1953 and ending on April 29, 1959. This sublease was consented to by Jones. The expiration date of the sublease between the landlord and the tenant herein was just one day prior to the expiration date fixed in the lease dated July 29, 1953, between the landlord herein and Jones. Moreover, pursuant to paragraph 37 of the foregoing lease it was expressly made subject to and subordinate to all of the terms and conditions of the latter lease. By the terms of the sublease dated September 30, 1953 the landlord permitted the tenant to use for the duration thereof the fixtures, partitions, doors, etc. located in the subject premises.
On September 30, 1953 and simultaneously with the execution of the said lease hereinabove described, the tenant executed a sublease to the landlord of room 2003 for a term commencing December 1,1953. Thereafter the tenant entered into possession of the subject premises and the landlord continued to occupy room 2003. On February 2, 1959 the landlord wrote to the tenant and informed it that it was to vacate the subject premises on April 20, 1959. Upon the expiration of the sublease the tenant refused to vacate the subject premises and continued and still continues in possession thereof. The landlord still continues to occupy room 2003. Thereafter and on May 1, 1959 this summary proceeding was instituted.
On May 6, 1954 the then owners of the Squibb Building leased to Mathieson Chemical Corporation, a predecessor in interest of Olin, space on several floors of the Squibb Building, for a term to end on December 1, 1968. Paragraph 41 of that lease granted to the tenant therein an option to lease, inter *780 alia, rooms 2103-2111, the subject premises at an annual rental of $4.75 a square foot. Squibb Building Corporation (hereinafter referred to as “Squibb”) the present landlord of the entire Squibb Building became landlord thereof under a long-term lease dated February 2, 1955, from Metropolitan Life Insurance Company, the. present owner of the fee. Thereafter, and on May 1, 1959, Squibb and Olin executed an amendment of the lease of May 6,1954, purporting to amend said lease to include within its terms the subject premises.
In its petition the landlord alleges, as one of the reasons why a precept be issued and made returnable forthwith, that it requires the subject premises for its own use, and at the trial the landlord offered proof to support this allegation.
Section 8 (subd. [d], par. [1]) of the State Business Rent Law (L. 1945, ch. 314, as amd. by L. 1953, ch. 452) provides that a landlord may under certain conditions recover business space if he seeks in good faith to recover it for his immediate and personal use. As will appear from the discussion soon to follow, the tenant herein was not a statutory tenant and therefore unable to claim the benefits and protections of the Emergency Rent Laws. Where, as in the case at bar, a tenant is not controlled, it is not necessary for a landlord to establish that he comes within the purview of section 8 (subd. [d], par. [1]) and that he seeks in good faith to recover possession of the space for Ms immediate and personal use. (Honey Shops v. Rothfeld, 12 Misc 2d 877.) The foregoing allegation, however, unnecessary and superfluous it may be, is not a fatal defect and does not render the petition jurisdictionally defective, as the tenant contends. (Honey Shops v. Rothfeld, supra.) Nor, as the tenant further contends, can the landlord be deemed to have ‘ ‘ elected ’ ’ tMs remedy and be precluded from obtaining relief on a proper ground. As Judge Learned Hand said in Doyle v. Hamilton Fish Corp. (234 Fed. 47, 51 [C. C. A. 2d 1916]): “ it is enough to say that a party has an election only between existing, not supposed rights. * * * The plaintiff could not destroy Ms rights under the lease by mistakenly following other supposed rights which turned out not to exist. That would be to put Mm, not to an election, but to a correct estimate of his right under pain of forfeiture.” Moreover, the landlord herein did not elect to pursue its supposed rights under section 8 (subd. [d], par. [1]); it asserted this right as an additional ground for granting the relief sought.
In its first defense the tenant alleges that it is a statutory tenant of the subject premises, including room 2003, presently occupied by the landlord pursuant to the Emergency Rent *781 Laws, and is entitled to remain in possession of said premises after the expiration of the term provided for in the lease of September 30, 1953; that is, after April 29, 1959. This defense can be readily disposed of. Section 12 of the State Business Bent Law (L. 1945, ch. 314, as amd. by L. 1953, ch. 45,2) provides that it shall be inapplicable to business space demised under a lease or sublease executed subsequent to March 31, 1950, to a person not in possession at the time of the execution thereof. The lease of the subject premises was executed on September 30, 1953 at a time when the tenant was not in possession of the subject premises and, therefore, the tenant herein cannot claim the benefit of the State Business Bent Law. (See, also, Honey Shops v. Rothfeld, supra; Teieher v. Chatsworth Stations, 285 App. Div. 1044.) The landlord herein had a right to invoke strict performance by the tenant of its covenant to vacate and surrender the subject premises upon the expiration of its lease, and upon the tenant’s failure to do so the landlord had a right, to treat it as a trespasser and institute this summary proceeding. (Globerman v. Grand Central Parkway Gardens, 115 N. Y. S. 2d 757, affd. 281 A. D. 820.)
In its second defense the tenant alleges that Squibb, the landlord of the entire building in which the subject premises are located, has made and entered into a lease with the tenant with respect to the subject premises for a term commencing May 1,1959 and ending December 31, 1968, and that Squibb has re-entered the subject premises, as a result of which any relationship of landlord and tenant which may have existed between the landlord and tenant in this proceeding has terminated. Implicit in the allegation that Squibb has “ reentered ” the subject premises, is the further allegation that the landlord herein has vacated and surrendered the premises. That the landlord herein has not vacated and surrendered the subject premises is a fact that cannot seriously be disputed. There can be no doubt that the landlord herein became a statutory tenant upon the expiration of its last lease with the owner of the building; that is, on April 30, 1959, by virtue of the fact that it first came into possession of the subject premises at least in 1942. (Business Bent Law, § 12; L. 1945, ch. 314, as amd.) The landlord herein has since the expiration of the tenant’s lease steadfastly and vigorously asserted its right to regain actual possession of the subject premises and has only been prevented from doing so by reason of the tenant’s refusal to vacate them. The landlord has with equal vigor asserted and attempted to enforce its rights as a statutory tenant. Its rights as a statutory tenant have not been interrupted or terminated in any way.
*782 The landlord herein never vacated or surrendered the subject premises, nor did it even intend to, when it entered into the lease with the tenant herein. That lease was entered into with the consent of the major landlord, and expressly provided in paragraph 37 thereof that it was subject to and subordinate to all the terms and conditions of the lease dated July 29, 1953 entered.into between the landlord and the then owner of the Squibb Building. Moreover, the expiration date of the lease between the landlord and the tenant herein for the subject premises was fixed at one day prior to the expiration date of the lease dated July 29, 1953 between the landlord herein and the then owner of the Squibb Building. The object and purpose of this is quite clear — it was intended that the landlord herein re-enter and resume actual possession of the subject premises on the last day of its term and thereby enjoy the rights and benefits of a statutory tenant under the State Business Rent Laws.
Tenant’s second defense is invalid for yet another reason. The tenant herein being a subtenant cannot question the rights and liabilities existing between the landlord herein and its major landlord. Such a defense if it did have any merit would be available only to the major landlord by way of affirmative relief. (Honey Shops v. Rothfeld, 12 Misc 2d 877, supra.) It is also well settled that where as in the case at bar a tenant has once acknowledged his landlord’s title and taken and held possession under him and has not surrendered his lease, he may not assert a paramount title to the prejudice of his landlord. (Warnick v. Mehl Realty Co., 190 Misc. 400.)
The rights of Squibb, the major landlord, to the subject premises can in no way be superior to those of the tenant herein, and the said rights are subject and subordinate to those of the landlord herein. Squibb is in the same shoes as its predecessor with respect to tenancies protected by the State Business Rent Laws. Squibb could have no right to re-enter and relet the subject premises until the landlord herein vacated or surrendered them, and that the landlord herein has not done.
What already has been said likewise disposes of the tenant’s third defense and counterclaim. The tenant having failed to prove any facts or circumstances to substantiate its counterclaim, the counterclaim is dismissed.
Accordingly, final order for the landlord. Warrant stayed to April 30,1960.